490 A.2d 932

**Myron KAPLAN, Successor Trustee Under Indenture of Trust dated October 15, 1982, Appellant**

**v.**

**BANKERS SECURITIES CORPORATION.**

Superior Court of Pennsylvania.

Argued May 22, 1984.

Decided Feb. 21, 1985.

Reargument Denied May 3, 1985.

580

James D. Crawford, Philadelphia, for appellant.

Joseph W. Swain, Jr., Philadelphia, for appellee.

Before: DEL SOLE, MONTEMURO, and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal involves the effect upon a commercial lessee's liability of an exculpatory clause which shields the lessee from further liability upon the happening of a contingency, where the lessee retains possession of and sublets the leased premises after the happening of that contingency. For the reasons discussed herein, we affirm the judgment entered in the lessee's favor.

Appellant, Myron Kaplan, is the successor trustee to Bernard G. Segal, trustee under an October 15, 1952 trust

agreement for the Trust, the owner of the leased premises in question. Appellee, Bankers Securities Corporation, is a Pennsylvania corporation. On May 17, 1954, Segal, as trustee, and Snellenburgs, an unincorporated division of appellee operating department stores in Pennsylvania, entered into a 30-year lease whereby Snellenburgs leased premises at 23rd Street and Oregon Avenue, Philadelphia, owned by the Trust. The parties also entered into a contemporaneous agreement which included a provision limiting appellee's liability. The lease was amended and supplemented by later agreements dated August 21 and September 28, 1956; March 18 and July 11, 1957; October 9, 1958; and July 21, 1960.

Pursuant to the lease, the Trust constructed a two-story department store and other improvements on the premises, and Snellenburgs took possession on August 24, 1955. Snellenburgs occupied the premises until March 5, 1962, when it sublet the premises to City Stores Company pursuant to Paragraph 12(a) of the lease,[1] without consultation with or the approval of the Trust.[2]

Snellenburgs thereafter ceased to operate a department store on the premises in question and began to liquidate its assets. Lit Brothers, an unincorporated division of City Stores, purchased all of the goods, inventory and fixed assets used there from Snellenburgs and took possession of the premises.

On or about February 15, 1963, Snellenburgs closed its last department store, ceased to do business anywhere and proceeded to total liquidation.

1. Paragraph 12(a) of the lease provided that:
   Lessee may at any time after it takes possession of the demised premises:
   (a) Sublease portions of the demised premises for the operation of leased departments, or *sublease part or all of the demised premises,* but in any event, Lessee shall not be relieved of its obligations hereunder.
   (Emphasis added).

2. Appellee owned approximately 50% of the outstanding stock of City Stores, a Delaware corporation, and therefore could elect the majority of its board of directors.

Paragraph 1 of the May 17, 1954 agreement, which was incorporated into the lease, provided that appellee's liability would be limited as follows:

Bankers Securities Corporation [appellee] warrants that it has authorized the execution of the annexed lease by "Snellenburgs, A Division of Bankers Securities Corporation," for occupancy in the conduct of a department store business or for other purposes stated in said lease. Anything in said lease to the contrary notwithstanding, *the liability of the Lessee and Bankers Securities Corporation* for the performance of the covenants and agreements therein contained and the liability for breach of any said covenants or agreements or howsoever arising and the exercise and enforcement of any remedies afforded under the terms of said lease or under the laws of Pennsylvania, *shall be and is hereby limited to assets which would be available to meet such liability as if a separate corporation had executed the said Lease as Lessee and on January 31, 1954 had a net worth of Five Million Dollars which net worth shall be charged with any losses, not restored by subsequent profits,* sustained in the operation of the department store business conducted under the name of "Snellenburgs, A Division of Bankers Securities Corporation," and from which net worth any excess over Five Million Dollars shall, on January 31, 1955, or at the end of any subsequent fiscal year of Snellenburgs, A Division of Bankers Securities Corporation be treated as withdrawn by its shareholders whether or not actually withdrawn, provided no withdrawal shall be made or treated as made which would reduce said net worth below Five Million Dollars at the time of said withdrawal.

(Emphasis added). From January 31, 1954 until March 5, 1962, Snellenburgs sustained losses in excess of five million dollars in the operation of its department store business and said losses were not restored by subsequent profits.

Lit Brothers occupied the premises and operated a department store thereon pursuant to the sublease until 1978;

then it discontinued operations, removing all assets and vacating the premises.

After Lit Brothers ceased operations, City Stores, on June 16, 1978, entered into a sublease with Nasha, Inc., t/a Ralph's Transmissions, Inc., for a portion of the premises consisting of a tire store for a term beginning July 1, 1978 and ending June 30, 1984, as amended by a July 14, 1978 letter agreement. Nasha, Inc. has remained in possession since then.

From March 5, 1962 until May 15, 1979, the Trust continued to collect all rental payments as they became due through its agent, Albert M. Greenfield & Co., Inc.

On May 15, 1979, appellee, in a letter, tendered surrender of possession of the premises to the Trust and informed the Trust that Snellenburgs' losses exceeded five million dollars. In its May 25 reply letter, the Trust informed appellee that (1) it did not accept the surrender, (2) appellee's actions constituted abandonment of the premises, and (3) appellee must perform its obligations under the lease.

On February 20, 1980, appellant, as successor trustee for the Trust, commenced an action in assumpsit against appellee, alleging a breach of the lease. Appellee filed an answer and new matter on April 28, 1980, denying any liability and relying upon paragraph 1 of the agreement.

On January 12, 1981, appellee filed a motion for summary judgment. On February 25, appellant filed a cross-motion for summary judgment. The lower court, per Judge Stern, denied both parties' motions on May 11, 1981. Appellee then filed a motion on June 4 for reconsideration of this order, which appellant answered on June 24. Subsequently, on January 8, 1982, the parties entered into a written stipulation of facts and filed memoranda of law. On October 22, 1982, the lower court, per Judge Prattis, entered an order denying judgment against appellee for money damages. The lower court also entered a supplemental order on November 22, 1982 which granted a summary judgment

in appellee's favor and against appellant. This appeal followed.

In construing a lease, the intention of the parties governs. *Pittsburgh v. Charles Zubik & Sons, Inc.*, 404 Pa. 219, 222, 171 A.2d 776, 778 (1961). An exculpatory clause in a commercial lease must be construed strictly against the party seeking its protection. *Bel-Air, Inc. v. Lawrence G.R. Kinney Co., Inc.*, 441 Pa. 147, 149, 271 A.2d 229, 230 (1970). Here, it is undisputed on appeal that Paragraph 1 of the lease agreement constitutes a valid exculpatory clause. In *Stephen Girard Estate Trustees v. Bankers Securities Corp.*, 425 Pa. 495, 229 A.2d 893 (1967), our Supreme Court interpreted a virtually identical clause in a 25-year commercial lease involving another Snellenburgs department store. That clause provided that the lessee's liability

shall be and is hereby limited to the assets which would be available to meet such liability if (I) a separate corporation had executed this lease as Lessee, and (II) on the date on which this lease commenced such corporation had a net worth of $10,000,000, and (III) such net worth were [sic] thereafter charged with any losses not restored by subsequent profits sustained in the operation of the department store business conducted under the name "Snellenburgs" or under such name as may be used at any time in the future to identify that business, and (IV) there were treated as withdrawn by such corporation's shareholders from such net worth all sums in excess of $10,-000,000 whether or not actually withdrawn, provided that no withdrawal shall be treated as having been made which would reduce the said net worth below $10,000,000 at the time of such withdrawal.

In *Stephen Girard*, the Supreme Court construed the above clause as follows: "The 'separate corporation' concept embodied in those clauses indicates that the parties intended that *no further liability would exist if the stated sum were lost* and that the computation would be made as if the lessee were a separate corporation." *Id.*, 425 Pa. at 499–

500, 229 A.2d at 895 (emphasis added). In the instant case, appellant concedes that appellee could have surrendered the leased premises on March 5, 1962 without any liability for further rent. Therefore, the question becomes: What is the effect of appellee's continuing the lease by subletting to another party?

■ Appellant, on behalf of the Trust, contends that appellee should have vacated the leased premises rather than subletting after the five million dollars net worth of the "separate corporation" was fully charged with losses not restored by subsequent profits. He argues that, by retaining the premises, appellee became akin to a holdover tenant,[3] lost its right to assert the exculpatory clause,[4] and became liable for rent for the remainder of the lease term. He also argues that, by liquidating Snellenburgs, appellee rendered impossible the occurrence of the contingency upon which its liability depended, namely, that losses would not be restored by subsequent profits. Appellee, however, contends that it was absolutely shielded from liability when Snellenburgs' losses exceeded five million dollars and that the limitations of Paragraph 1 were not affected by its sublease or by the termination of Snellenburgs' operations.

■ We initially find that the contingency in question can be characterized as an "event that terminates a duty" under

**3.** Where a tenant holds over after the landlord has given notice terminating the lease, the landlord has the choice of several options: (1) to treat the tenant as a trespasser and summarily eject him; (2) to treat the tenant as holding over as a tenant by sufferance; or (3) to treat the tenant as holding over under the terms of the lease. *Pittsburgh v. Charles Zubik & Sons, Inc.,* 404 Pa. 219, 223, 171 A.2d 776, 778 (1961).

**4.** In support of this argument, appellant relies upon the following statement:

[t]he principle is general that whereever a contract not fully performed on either side is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform, unless the right to retain the excuse is not only asserted but assented to.

5 S. Williston, A Treatise on the Law of Contracts § 688 (3d ed. 1961 & Supp.1984). *Cf. Steinman v. La Charty Hotels Co.,* 355 Pa. 444, 447, 50 A.2d 297, 298 (1947) (burden of establishing waiver or forfeiture of lease provision was upon lessee).

§ 230 of the Second Restatement of Contracts. The Second Restatement uses this term instead of the former term "condition subsequent," *see* Restatement of Contracts § 307 (1932), and merely "gives guidance as to when duty under [an existing] contract may be extinguished." *Cambria Savings and Loan Association v. Estate of Gross,* 294 Pa.Superior Ct. 351, 355–56, 439 A.2d 1236, 1239 (1982). Thus, Restatement (Second) of Contracts § 230 (1981) provides, in relevant part, that: "(1) Except as stated in subsection (2), [not applicable here] if under the terms of the contract the occurrence of an event is to terminate an obligor's duty of immediate performance or one to pay damages for breach, that duty is discharged if the event occurs." Here, the condition in question was the incurrence by appellee of five million dollars in losses not restored by subsequent profits. Upon the happening of this event, appellee was entitled to avoid further liability and to surrender the leased premises. *See Stephen Girard Estate Trustees v. Bankers Securities Corp., supra.*

■ After careful consideration, we further find that appellee's assertion of Paragraph 1 was not affected by its sublease or by its termination of Snellenburgs' operations. First, the time of appellee's surrender of the premises after the incurrence of five million dollars in losses was not specified in the agreement because appellee had to wait and see if subsequent profits would restore the losses. The contract does *not* expressly provide for the immediate surrender or automatic termination of the lease upon appellee's accumulation of five million dollars in charges. Additionally, we cannot find that appellee has, by subletting rather than vacating the premises, waived his right to assert the exculpatory clause defense. The lease agreement does *not* provide that appellee's right to invoke Paragraph 1's limitations will be defeated by subletting pursuant to Paragraph 12(a), *see* Paragraph 12(a) of the Lease, or that appellee must surrender the premises upon the termination of Snellenburgs' operations. Moreover, we note that appellant continued to accept rent payments until 1979, even after the

five million dollar mark was passed and the premises were sublet to Lit Brothers. Finally, we reject appellant's characterization of appellee as a holdover tenant because the original term of the lease had not yet expired or been prematurely terminated prior to May 15, 1979.[5]

Under these circumstances, because appellee lost the "stated sum" of five million dollars, not restored by subsequent profits, we conclude that Paragraph 1 of the agreement shielded appellee from liability and that therefore appellee was entitled to surrender the leased premises on May 15, 1979, prior to the expiration of the original lease term. Accordingly, we affirm.

Affirmed.

---

**5.** Appellant cites *Girard Trust Co. v. Tremblay Motor Co.,* 291 Pa. 507, 140 A. 506 (1928), and *Buschman v. Wilson,* 29 Md. 553 (1868), in support of his argument that, because the happening of the contingency provided for in Paragraph 1 of the instant agreement determined the lease, appellee should thereupon have surrendered the premises to the Trust as of March 5, 1962. However, appellant's argument presupposes that appellee's subletting the premises on that date affected appellee's right to invoke the exculpatory clause. Additionally, those cases are distinguishable because, there, the conditions involved definite occurrences in time, *e.g.,* destruction of the demised premises, whereas the time period for the instant event was indefinite, *i.e.,* five million dollars in losses not restored by subsequent profits.