## Moskowitz's Registration Case.

184

Argued January 6, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Leon I. Mesirov,* for appellant.

*Marshall H. Morgan,* for appellee, was not heard.

OPINION BY MR. CHIEF JUSTICE KEPHART, January 24, 1938:

Appellee, David Moskowitz, in the Fall of 1935 was duly registered as a qualified elector of the sixth election division of the Second Ward. On March 12, 1936, he

was convicted in the Quarter Sessions Court of Philadelphia County under Section 51 of the Personal Registration Act for Philadelphia, adopted July 10, 1919, P. L. 857, of intentionally interfering with an inspector of registration in the performance of his duties. The Registration Commission, on April 17, 1936, acting on its own volition, and with the record of the court of quarter sessions before it which did not exhibit any sentence of disfranchisement by that court, issued an order striking appellee's name off the registry. Moskowitz appealed to the court of common pleas, where the ruling of the commission was sustained. An appeal was taken to this Court and dismissed in 324 Pa. 144, the question having become moot. Meanwhile, on June 12, 1936, the original sentence was amended by adding the penalty of disfranchisement. Appellee again attempted to register on October 2, 1937, and the Registration Commission refused to enroll him as a voter. An appeal followed and the court of common pleas reversed the Commission, directing appellee to be registered. The Registration Commission brings this order before us.

The Commission relies on Article VIII, Section 9, of the Pennsylvania Constitution, and the resentencing of appellee, in refusing to register him as a voter. The former reads: "Any person who shall, while a candidate for office, be guilty of bribery, fraud or wilful violation of any election law, shall be forever disqualified from holding an office of trust or profit in this Commonwealth; and *any person convicted of wilful violation of the election laws shall, in addition to any penalties provided by law be deprived of the right of suffrage absolutely for a term of four years.*"

The first question here presented not only embraces a consideration of whether the Personal Registration Act is an election law within the meaning of Article VIII, Section 9, but whether any interference with the legislatively undefined "act or duty" of an inspector of registration can be called a violation of the election law for the

purpose of disfranchisement, and whether the term "wilful" means "fraudulent." Interesting as all these matters may be, our conclusion that appellant has no standing to bring this appeal, and our disposition of the following question make their discussion unnecessary.

Is a person convicted of a violation of an election law under Article VIII, Section 9, automatically deprived of the right to vote or must deprivation of the right of franchise be included in the sentence of the court to become operative?

Appellee contends, in substance, that Article VIII, Section 9, is not self-executing in respect to disfranchisement and that the failure of the quarter sessions court to include it as a part of the sentence imposed upon him exempts him from its operation and entitles him to register as a qualified elector. Disfranchisement is a severe penalty and carries with it certain degradation. Election laws are enacted to protect the constitutional form of government, and to insure its perpetuation any violation of such laws should be severely punished—but how must the punishment be imposed?

It is plain from Article VIII, Section 9, that deprivation of the right to vote for a period of four years is strictly a penalty. It reads, "Any person convicted of wilful violation of the election laws, shall, *in addition to the penalties provided by law,* be deprived of the right of suffrage. . . ." Disfranchisement is a penalty to be imposed along with the other penalties prescribed by law for such offenses. The natural and obvious meaning is that the violator upon conviction shall suffer the loss of his right to vote as additional punishment. This interpretation is strengthened by the fact that in respect to disqualification from holding office the same provision reads, "Any person who shall . . . be guilty of bribery . . . shall be forever disqualified from holding an office. . . ." It will be noted that the word "guilty" is used and not "convicted." In other words, criminal prosecution and conviction are not necessary

to disqualify a person from holding office; mere guilt is sufficient: See *Commonwealth v. Walter*, 83 Pa. 105, 108. Disqualification cannot be considered a penalty since conviction is not necessary. On the other hand, disfranchisement can only be suffered after prosecution for the violation of an election law and conviction therefor. Then and only then can the right to vote be taken away.

In *Huber v. Reily*, 53 Pa. 112, we considered a federal statute imposing forfeiture of citizenship and disqualification from holding office for the crime of desertion from military or naval service. The statute provided: ". . . in addition to the other lawful penalties of the crime of desertion . . . all persons who have deserted . . . shall be deemed . . . to have forfeited . . . their rights of citizenship. . . ." It will be noted that in certain respects the wording is similar to the section under consideration, especially the phrase "in addition to the other lawful penalties." Forfeiture of citizenship was there construed to be a penalty for the commission of the crime of desertion. We stated at p. 114: "Its avowed purpose is to add to the penalties which the law had previously affixed to the offense of desertion from the military or naval service of the United States, and it denominates the additional sanctions provided as penalties." Likewise, Article VIII, Section 9, adds to any penalties existing under the law for violation of an election law the further penalty of disfranchisement. That much is clear.

The words "shall . . . be deprived of" require action. By whom shall he be deprived of the right to vote? Obviously, by the court in which he was convicted. The badge of disqualification should be written into the record where the fact may be ascertained with certainty. Disobedience to the sentence may be followed by punishment for contempt, no matter in what part of the State the disobedience occurs. When the court denies the

right to vote, the vote must be rejected wherever it is attempted to be cast.

The duty of the trial court to include constitutional penalties in the sentence has recently been passed upon by this court in a case arising under Article VI, section 4 of the Pennsylvania Constitution, which provides: "All officers shall hold their offices on condition that they behave themselves well while in office, and *shall be removed* on conviction of misbehavior in office. . . ." In *Commonwealth v. Davis,* 299 Pa. 276, the sentence read, the defendant "shall be and *is hereby removed from the office of mayor,"* and the question before us was whether this operated to divest him of his office. This Court in holding that it did remove him from office pointed out that removal must be included in the sentence if it is to result from the conviction. The words *"shall be removed on conviction"* were held to mean precisely what they indicate, that is, removal at the time of conviction by some one with authority, and the only authority was in the court in which the conviction occurred through its sentence and not in some other proceeding. We there called attention to the fact that the language is similar to that employed in most of our criminal statutes, and used in the same sense. We stated, at page 280: "Moreover, every lawyer in the convention knew that in practically all our crimes acts similar language appeared. These statutes, after defining the crime, say that the defendant *'on conviction'* shall be fined and/or imprisoned, the penalty being imposed by the court before whom the defendant was convicted. Naturally they would expect, therefore, as everyone else would, that the constitutional provision providing for a specified punishment 'on conviction' would be interpreted in exactly the same way,—the court on conviction 'shall' impose the specified punishment. Especially is this true since the Constitution by Article V vested all the Commonwealth's judicial power in the courts, and the punishment to be imposed 'on conviction' had been imposed by

the courts from the earliest days of the common law; a practice, so far as we are aware, which has never been departed from except where arbitrary power was given to or usurped by some one connected with the executive branch of government."

This reasoning applies with equal force to the instant case. "The court 'on conviction' *shall* impose the punishment prescribed by law." No one but the trial court can impose the punishment. Its sentence alone is determinative of the legal consequences flowing from the offense for which appellee was convicted. Article VIII, Section 9, is mandatory and places the court under an absolute duty to decree loss of suffrage for four years in the sentence. The constitutional provision does not change the method or eliminate the necessity of imposition of the sentence by the trial court: see *Huber v. Reily,* supra, at page 120. Where a court fails to carry out the constitutional mandate and does not include in the sentence deprivation of the right of suffrage, executive or administrative officers cannot supply the defect. Through appropriate proceedings, however, the court may be compelled to inflict the proper penalty: *Ex parte United States, Petitioner,* 242 U. S. 27. The Registration Commission in attempting to enlarge appellee's sentence usurped power vested exclusively in the quarter sessions court.

The judgment, which includes the sentence of the quarter sessions court, when lawfully imposed, is final, conclusive and binding on other courts: *Tourison's Estate,* 321 Pa. 299. It binds the Registration Commission as to the extent of punishment to be suffered by one convicted. The court of common pleas cannot add to such sentence the constitutional penalty of disfranchisement, nor supply it in other forms, no matter how flagrant the trial court may have been in neglecting to impose a proper sentence. If the deprivation of the right to vote is not included in the sentence, the omission cannot be supplied by the Commission. The District Attorney, or

the Registration Commission, should have called the trial court's attention to this error so that the constitutional penalty could have been inflicted. As this was not done, the action of the Commission in attempting to impose it was error.

There is no merit in appellant's contention that the amendment of the sentence operated to cure its original deficiency. The attempt to amend was made three months after the original sentence was imposed and after the expiration of the term of court at which appellee was convicted. A court may not legally resentence a criminal after the term has ended. In *Commonwealth v. Ciccone*, 84 Pa. Super. Ct. 224, Mr. Justice LINN, then Judge, reasserted this established rule of law. Referring to an attempt by the trial judge, after the expiration of the term, to add a sentence of imprisonment to the fine originally imposed, it was said at p. 227: "By the Act of 1860 the court had the power to fine and to imprison; having done either, the power to resentence expired with the term." See also *Commonwealth v. Mayloy*, 57 Pa. 291. If it were permissible to amend, modify or revise sentences without this limitation the entire administration of criminal justice would be disrupted and manifest abuses would result. Here the entry showed on its face that the additional sentence was imposed three months after the expiration of the term and therefore discloses to any examiner of the record the fact that it was entered without jurisdiction. It is manifestly a nullity. Such a judgment is entitled to no authority or respect, and is subject to impeachment in collateral proceedings at any time by one whose rights it purports to affect. In *Camp v. Wood*, 10 Watts 118, it was held that a void judgment of a justice of the peace could not be introduced to establish rights in a subsequent proceeding over the same property. And, in *Simpson's Estate*, 253 Pa. 217, 225, this Court said: " 'When the jurisdiction does not exist, and usurpation takes its place, then all the acts of the tribunal are void "and of

none effect," and may be so treated in any collateral proceeding. . . . Where there is no jurisdiction there is no authority to pronounce judgment, and consequently a judgment so entered is so but in form and similitude, and has no substance, force, or authority': *Miltimore v. Miltimore,* 40 Pa. 151, 155. And it is never too late to attack a judgment or decree for want of jurisdiction." See also *Clark's Estate,* 275 Pa. 506, 509; *Noble v. Thompson Oil Co.,* 79 Pa. 354. The attempt to add disfranchisement to the sentence in the present case was abortive and without legal effect.

While this is undoubtedly the law, we must dismiss this appeal because appellant is not a proper party to prosecute the proceeding. Under the First Class City Permanent Registration Act of March 30, 1937, P. L. 115, section 25, the Registration Commission is authorized to entertain appeals from those refused the right to register. In disposing of such appeals, the Commission is merely an arbiter of the rights of the parties. As such, the body has no real interest in the proceedings such as would entitle it to the status of a party at common law.

Appellant, however, claims statutory authority for its appeal. Section 42 (a) of the Act of 1937 authorizes parties aggrieved by the decisions of the Commission to appeal to the court of common pleas. Section 43 (b) makes the Commission a "party appellee to all such appeals" if it desires to answer or appear. Although no appeal to this Court is provided, we possess the right to review by certiorari the record of the proceedings in the court of common pleas. Appellant now contends that its status as appellee in the court below makes it a party here within the rules governing appeal by certiorari. This is a non-sequitur. Whatever standing appellant may have in the courts of common pleas on appeal from its own decisions is statutory. It possesses no common law right, and the statute conferring it must be strictly construed. Section 43 (b) does not give the Commission

any standing to prosecute an appeal to an appellate court by certiorari or otherwise, and it cannot usurp this right when it is not granted by the legislature. It might as well be contended that a court of common pleas may appeal to this court from a reversal of its decisions by the Superior Court, as to assert that the Commission may properly pursue the course it has here attempted.

The appeal is dismissed, and the decree and order of the court below are affirmed.