345 A.2d 709

POCONO PINES CORPORATION

v.

PENNSYLVANIA GAME COMMISSION, Common-
wealth of Pennsylvania, Appellant.

Supreme Court of Pennsylvania.

July 7, 1975.

Rehearing Denied Oct. 28, 1975.

18

Israel Packel, Atty. Gen., Raymond C. Miller, Deputy Atty. Gen., Benjamin B. Solomon, Asst. Atty. Gen., Norman Watkins, Harrisburg, for appellant.

Charles B. Zwally, John Havas, Shearer, Mette, Hoerner & Woodside, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal arises from an order of the Commonwealth Court which granted the request of appellee, Pocono Pines Corporation, to compel appellant, the Pennsylvania Game Commission, to execute the necessary instruments to confirm appellee's interest in land claimed by appellant. We granted Petition for Allowance of Appeal.

The facts surrounding this appeal are as follows. Appellant claims title to an interest in the disputed land through a deed recorded in Monroe County on December 28, 1949, from the United States of America to appellant for use of the land as a wildlife preserve. The deed left the mineral rights in the United States and provided that title would revert to the United States whenever the President or other governmental official declared the land was needed for defense purposes. The United States' title was derived from a 1918 condemnation proceeding against Frank C. Miller, the original owner of the disputed land. Appellee claims title to the land through Frank C. Miller, and further claims that the United States' condemnation of Miller's property was ineffective for lack of notice to Miller. The Commonwealth Board of Property found the condemnation to be valid; this decision was appealed to the Commonwealth Court, which reversed the board, holding that the United States' condemnation was invalid, and ordered the execution of the necessary documents to confirm appellee's interest in the land. This appeal followed.

20

■ Initially, we must point out that while the action filed by appellee before the Board of Property carried no technical designation, it is, in our opinion, an action to quiet title, as defined in Pa.R.C.P. No. 1061(b)(3), 12 P.S. Appendix, which provides:

" . . . to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land . . . . "

In the instant case, appellee brought suit to compel appellant to execute necessary documents in order to confirm a deed in favor of appellee. Based on this request, we must treat the petition filed by appellee as, in fact, an action to quiet title.

■ Having found that the action filed before the Board of Property is, in essence, one to quiet title, we are of the opinion that both the Board of Property and the Commonwealth Court lacked jurisdiction to hear this action for want of an indispensable party, the United States government.

The issue before the Board of Property was whether Pocono had a right to have a deed executed in its favor from the Pennsylvania Game Commission. This relief, as requested by Pocono, in turn centered on whether the deed to the Game Commission from the United States government in 1948, which left a reversionary interest in the property, as well as title to the mineral rights, in the United States government was valid based on the United States government's acquisition of the property in a 1918 condemnation proceeding. If the condemnation was valid, Pocono could not prevail. It therefore becomes apparent that any decision rendered by the Board of Property would affect the property rights claimed by the United States government without its being represented before the Board of Property.

The United States government had an interest to protect in the property and had a right to contest the alleged invalidity of the 1918 condemnation proceeding. Under these facts, we are of the opinion that the United States government was an indispensable party to the action before the Board of Property, and its failure to be joined as a party deprived the Board of Property of jurisdiction in the instant matter. In *Tigue v. Basalyga*, 451 Pa. 436, 304 A.2d 119 (1973), we defined what is meant by an indispensable party:

> "Hence, the deceased grantee's rights are so connected with the plaintiffs' claim that a decree cannot be made without impairing such rights. His estate, therefore, is an indispensable party." At Page 439, 304 A.2d at 120.

In the instant case, the reasoning of our *Tigue* decision also compels us to conclude that the United States government was an indispensable party before the Board of Property, and its failure to be present deprives the Board of Property of jurisdiction. The United States government, even though it deeded the property to the Game Commission in 1948, retained a reversionary interest and the title to mineral rights to the property now claimed by Pocono as a result of an alleged ineffective condemnation proceeding. The decision of the Board of Property, as the decision of the court in *Tigue*, would have the result of affecting or impairing the rights of the United States government, an indispensable party, which was not joined before the Board of Property. This failure divests the Board of Property of jurisdiction. Cf. *Mains v. Fulton*, 423 Pa. 520, 224 A.2d 195 (1966); *Mohney Estate*, 416 Pa. 107, 204 A.2d 916 (1964).

■ Moreover, at the time appellee filed suit before the Board of Property, the board lacked subject matter jurisdiction for another reason, other than for failure to join an indispensable party. At the time appellee filed

its action before the Board of Property, the board lacked jurisdiction to hear a claim to property in which the United States claimed an interest. 28 U.S.C.A. § 1346 and § 2409, in effect at the time the within action was filed, made it clear that the United States government had not consented to be sued by a party claiming an interest such as the appellee herein claimed. Moreover, in 1972 the above statutes were amended and specifically provided for actions to quiet title to be filed against the United States government. See 28 U.S.C.A. § 1346(f), which provides:

"(f). The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States. As amended Aug. 30, 1964, Pub.L. 88–519, 78 Stat. 699; Nov. 2, 1966, Pub.L. 89–719, Title II, § 202(a), 80 Stat. 1148; July 23, 1970, Pub.L. 91–350, § 1(a), 84 Stat. 449; Oct. 25, 1972, Pub.L. 92–562, § 1, 86 Stat. 1176."

And 28 U.S.C.A. § 2409a, which provides:

"(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands, nor does it apply to or affect actions which may be or could have been brought under sections 1346, 1347, 1491, or 2410 of this title, sections 7424, 7425, or 7426 of the Internal Revenue Code of 1954, as amended (26 U.S.C. 7424, 7425, and 7426), or section 208 of the Act of July 10, 1952 (43 U.S.C. 666)."

These sections, effective in 1972 for the first time, allowed the United States to be named as a party in a suit to quiet title. It therefore becomes apparent that up until this time no action could be held in state or federal

court to quiet title to property in which the United States claimed an interest. See *Stanton v. United States,* 434 F.2d 1273 (5th Cir. 1970).

Moreover, the legislative history behind the passage of 1346(f) and 2409a establishes that the sections were enacted to allow a party to quiet title to property in which the United States claimed an interest which, prior to the statutes' amendments, was impossible. See 1972 U.S. Code Cong. and Admin.News, p. 4557.

Order of Commonwealth Court is vacated. Case remanded to Board of Property to dismiss the petition of appellee for want of jurisdiction.

ROBERTS, J., filed a dissenting opinion, in which JONES, C. J., joins.

ROBERTS, Justice (dissenting).

I must register strong disagreement with the majoriᵗy's conclusion that the United States is an indispensible party for this action before the Board of Property.

Compulsory joinder of parties is governed by Pa.R. Civ.P. 2227(a), which provides:

"Persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants."

In this case, the United States purports to be the sole owner of the mineral rights and a reversionary interest in the tract. The Pennsylvania Game Commission claims to be the sole owner of the fee interest subject to the mineral rights and reversionary interest of the United States. It is clear to me that neither the United States nor the Pennsylvania Game Commission can possibly be held to be "[p]ersons having only a joint interest in the subject matter . . . ." Therefore, Rule 2227(a) does not require the joinder of the United States.

The majority apparently decides this case without considering Rule 2227(a). It relies instead on a standard

apart from the rule that provides that "a party is indispensible where his rights are so connected with the claims of the litigants that no decree can be made between them without impairing such rights." *Powell v. Shepard*, 381 Pa. 405, 412, 113 A.2d 261, 265 (1955); see *Tigue v. Basalyga*, 451 Pa. 436, 439, 304 A.2d 119, 120 (1973).

Assuming that it is proper to create a standard of indispensibility apart from Rule 2227(a), the majority grievously misapplies that standard. It is perfectly clear that the Board of Property could adjudicate the claim of appellee Pocono Pines and enter an appropriate decree without impairing any rights of the United States. All appellee is requesting is that the Board decide whether appellee or the Game Commission has a superior right to the interest that the Commission claims to own. Should it be determined that appellee has the superior right, the appropriate relief would be a decree awarding to appellee such interest as the Commission purports to have, subject to the rights of the United States. Complete justice could be administered between the parties before the Board, while the rights of the United States would remain to be determined at another time and in another forum. Surely, therefore, a decree can be framed that does not impair the rights of the United States. Accordingly, the United States is not an indispensible party.

The effect of the majority's holding that the United States is indispensible is to deprive appellee and others in its position of *any* forum in which their claims may be heard. Actions to try title to real property claimed by the Commonwealth may be brought only before the Board of Property. The United States may be sued concerning title to real property in which it claims an interest, if at all, in the federal courts. Thus, there is no judicial or administrative forum in which both the United States and the Game Commission can be joined for the adjudication of appellee's claims. That result, though

harsh, would be the proper one if the United States were strictly indispensible, but surely we should strive to avoid such a result unless absolutely necessary for the protection of the rights of a non-party. Here it is not necessary, for it is possible for the Board and the courts to frame an appropriate decree protecting the rights of the United States.

The majority's alternate holding that the Board lacked subject matter jurisdiction when this action was instituted is simply incorrect. The statutes cited by the majority which were in effect at the commencement of this action provided only that the United States had not consented to be made a party to such an action. They obviously have nothing to do with the subject-matter jurisdiction of the Board when the United States is not sought to be made a party.

The merits of this dispute are extremely complex, and I see no need to consider them here when the majority fails to reach them. Accordingly, because the majority erroneously fails to consider the merits of this appeal, I dissent.

JONES, C. J., joins in this dissent.