607 A.2d 1094

**Charles DeCOATSWORTH, Appellant,**

v.

**Louis E. JONES.**

Superior Court of Pennsylvania.

Argued Jan. 9, 1992.

Filed May 1, 1992.

Charles DeCoatsworth, pro se, appellant.

Allan K. Marshall, Philadelphia, for appellee.

Before CIRILLO, TAMILIA and FORD ELLIOTT, JJ.

CIRILLO, Judge:

This is an appeal from an order entered in the Court of Common Pleas of Philadelphia County denying Charles De-Coatsworth's petition to strike judgment for the trial court's lack of jurisdiction. We reverse.

In December of 1983 a dwelling owned by Odessa and Louis Jones, as tenants by the entireties, was listed to be sold at a sheriff's sale due to the owners' failure to pay a lien of $1,700.00. Alan Alper, who arranges financing for

owners in jeopardy of losing their properties, sent a notice to the Joneses' dwelling suggesting that he could help. Louis Jones ("Louis") arranged to have Alper meet him at his house on December 3, 1983, two days before the scheduled sheriff's sale. Alper took appellant Charles DeCoatsworth, a real estate investor, with him to the meeting with Louis Jones. Louis's estranged wife and co-owner of the dwelling, Odessa Jones ("Odessa"), was not at the meeting. DeCoatsworth looked over the property and left within a half hour; Alper remained for more than eight hours. At the end of their lengthy negotiations, Louis and Alper ostensibly had an agreement of sale. The agreement provided that Alper, through one of his real estate investors (here, DeCoatsworth) would pay Louis's outstanding debts on the property, refinance the property, and pay one dollar in consideration. In exchange, Louis signed a blank deed to the property with the understanding that he could continue to live in the dwelling and either pay rent (not to exceed $300.00 per month), enter into a lease-purchase agreement in which the full rental payment would be applied to the purchase price, or buy the property outright.

Alper contacted Odessa, and on December 4, 1983 she signed the blank deed in return for one thousand dollars. The next day Alper paid the judgment lien and stayed the sheriff's sale. In seeking title insurance for the property, DeCoatsworth learned of two additional mortgages on the property which, under the terms of the agreement of sale, he was obligated, but failed, to pay. On January 5, 1984, at settlement,[1] Alper completed the deed by inserting $10,-000.00 (and not one dollar as agreed) for the amount of consideration.[2] Alper had the deed notarized,[3] and simulta-

---

1. Neither Louis nor Odessa Jones were either notified of or attended settlement. Alper contends neither was necessary as the deed had already been signed by both sellers and assigned to DeCoatsworth.

2. Louis received none of the $10,000.00 consideration listed on the deed.

3. Louis later sought recovery against the notary public who acknowledged the deed, Frankford Abstract Company, and Commonwealth Land Title Insurance Company. The three claims were settled out of

neously assigned and delivered the deed to appellant De-Coatsworth as security for the $1,700.00 DeCoatsworth had already expended.

Later that same month Louis received a statement from DeCoatsworth outlining the three options for remaining in the house. The statement listed the total cost of repurchasing the house from DeCoatsworth as $15,000.00, which was to be repaid over twenty years at fourteen percent interest, the prevailing rate at that time.[4] The $15,000.00 purchase price covered, among other expenses, a $5,000.00 profit for DeCoatsworth, $3,175.00 for Alper's services in arranging the deal, and the $1,000.00 Odessa received for her signature on the deed. However, none of these charges had been agreed to in the agreement of sale.

Louis refused to pay any of DeCoatsworth's charges and remained in the house, rent free, until September of 1984 when DeCoatsworth filed a complaint to evict him.[5] Louis counterclaimed against DeCoatsworth, alleging fraud in the transaction that deprived him of his property, and seeking $20,000.00 in damages, plus attorney's fees. Neither Louis nor DeCoatsworth added Odessa as an indispensable party to the counterclaim, despite the fact that she was co-owner of the entireties property and therefore equally a victim of the alleged fraud. The case was tried in December of 1987 and the jury found in favor of Louis. The jury rejected DeCoatsworth's eviction claim, permitting Louis to remain in the house rent free, and awarded him $35,000.00 in damages as well. Title to the property, however, remained in DeCoatsworth's name. The post-trial motions of Louis,

court before the companion case, *Jones v. Alper, infra* at page 1100, went to trial.

4. The original lien against the Joneses' property was for $400.00, assessed by the city of Philadelphia for the Joneses' portion of the cost of repaving their street. By the December 5, 1983 sheriff's sale, court and sheriff's costs and accrued interest had increased the total to $1,700.00. Under DeCoatsworth's plan of a 20 year mortgage at 14%, the $15,000.00 repurchase price would ultimately have cost Louis $44,000.00.

5. Only Louis was named in the eviction complaint as Odessa had not lived there for twenty years.

to have title transferred to him, and DeCoatsworth, for a new trial or judgment notwithstanding the verdict, were denied. On appeal to this court the panel affirmed the jury's verdict.[6] DeCoatsworth then appealed to the supreme court, but his petition for allocatur was denied in August of 1990.

■ Shortly thereafter, DeCoatsworth petitioned motions court, *pro se*, to strike the trial court judgment for that court's lack of subject matter jurisdiction over Louis's counterclaim. DeCoatsworth argued that since Louis's counterclaim alleged fraud in the transaction that deprived him of title to his property, only the legal entity that was deprived of that title could sue. The property in question was owned by both Louis and his wife, Odessa.[7]

6. 394 Pa.Super. 635, 569 A.2d 1388, No. 2466 Philadelphia 1988, Judge Kelly dissenting. (Reargument denied November 2, 1989). In his dissent, Judge Kelly noted the inconsistency of the jury verdict and stated that he would remand with instructions for Louis to elect *either* to remain in the house *or* to retain the $35,000.00 in damages. In a footnote, Judge Kelly noted his displeasure with the trial court's failure to correct the jury verdict when properly requested to do so by DeCoatsworth in his post-trial motion.

7. In her opinion of July 20, 1988 denying DeCoatsworth's post-trial motions, the Honorable Sandra Mazur Moss states: "... the facts indicate that before the appearance of DeCoatsworth and Alper on the scene, *all Jones owned was an undivided one-half interest in said property*, Odessa Jones, his estranged wife, owning the other half." Thus, Judge Moss should have ordered joinder, *sua sponte*, of Odessa Jones in Louis's counterclaim of fraud in depriving him [them] of title to the house.

In denying DeCoatsworth's motion to strike judgment for lack of subject matter jurisdiction, in her opinion issued August 22, 1991, Judge Moss states that DeCoatsworth knew of Odessa's existence and should have either joined her himself, called her as a witness, or petitioned the court to join her. Judge Moss also states:

Moreover, Odessa Jones allegedly received $1,000.00 for her signature on the deed. Testimony indicated the house was worth $35,-000.00 of which Odessa was entitled to $17,500.00. Accordingly, if Odessa Jones had been joined her testimony would have indicated she had been cheated out of $16,000.00—hardly a helpful allegation to Plaintiff's [DeCoatsworth's] case.

Judge Moss's intimation that DeCoatsworth intentionally failed to join Odessa because it was against his interest to do so mystifies us. The jury found in favor of Louis in the amount of $35,000.00. Whether DeCoatsworth pays Louis the full $35,000.00, or Louis $17,-500.00 and Odessa $16,500.00 is immaterial, because either way he

In Pennsylvania, a conveyance to a husband and wife, without more, creates an estate by the entireties. *Brenner v. Sukenik*, 410 Pa. 324, 330, 189 A.2d. 246, 249 (1963). "It is their actual marital status and not necessarily the words stated or omitted in the instrument that determines their right to take as tenants by the entireties." *In Re Holmes' Estate*, 414 Pa. 403, 406, 200 A.2d 745, 747 (1964), citing Ladner on Conveyancing in Pennsylvania, § 1.16 (3rd ed. 1961). Similarly, "the presumption remains that where property is held in the names of husband and wife they hold it by entireties and not as ordinary joint tenants or as tenants in common." *Madden et al. v. Gosztonyi Savings and Trust Co.*, 331 Pa. 476, 484, 200 A. 624, 628 (1938). An entireties estate may only be severed under limited circumstances. During the lifetime of both spouses the tenancy may be severed only by a joint conveyance of the estate, by express or implied mutual agreement, or by divorce. *Clingerman v. Sadowski*, 513 Pa. 179, 183, 519 A.2d 378, 381 (1986). Neither party may unilaterally sever or destroy the entireties estate. *Shapiro v. Shapiro*, 424 Pa. 120, 136, 224 A.2d 164, 173 (1966).

Although Louis and Odessa had been estranged for decades, they had never divorced; title to the house was still in both of their names. Therefore, according to DeCoatsworth, since Louis's counterclaim addressed the circumstances which also deprived Odessa of her undivided one-half interest in the entireties property, Odessa was a necessary and indispensable party whose joinder was compulsory to establish subject matter jurisdiction. DeCoatsworth's motion to strike judgment, heard by the original trial judge, was denied. DeCoatsworth was also "ordered to pay the

owes $35,000.00. Furthermore, Odessa was not a necessary party to DeCoatsworth's claim, *which was only to evict Louis from the premises.* Although Odessa was a co-owner of the house, she had not lived there for twenty years. The burden was on Louis to join her, for Odessa was an indispensable party *only to Louis's counterclaim* of fraud in the transaction that deprived him and his wife of title to their house. Judge Moss's intimation would be more appropriately directed at Louis, for he gained $16,500.00 by failing to join his estranged wife as an indispensable party in his counterclaim.

sum of $2,500.00 in attorney's fees for filing a petition [the] court finds blatantly frivolous." DeCoatsworth filed this timely appeal.

DeCoatsworth presents four issues for our review:

1. Did both the Trial Court and the Motions Court Err in not recognizing that Odessa Jones was an indispensable party to Louis Jones' counter-claim since the property in question was owned and sold by the entireties of Louis and Odessa Jones, husband and wife?

2. Did the trial Court lack jurisdiction to hear and decide the issues presented in Jones' counterclaim because of the absence of an indispensable party and, therefore, err in allowing the jury to reach a verdict and in entering judgment?

3. Did the Motions Court err in denying DeCoatsworth's Petition to Strike Judgment since, because of the absence of an indispensable party, the Trial Court lacked jurisdiction to render that same judgment?

4. Did the Motions Court err in finding DeCoatsworth's Petition to Strike Judgment to be "blatantly frivolous" and in taxing him $2,500.00 based on that finding?

Louis filed a motion with this court to quash DeCoatsworth's appeal, characterizing it as "a second appeal." Louis also requested $2,000.00 in attorney's fees, pursuant to 42 Pa.C.S. § 2503 and Pa.R.A.P. 2744. The motion to dismiss the appeal was denied. The request for attorney's fees was referred to this panel to be determined in conjunction with the merits of the case.

 A petition to strike judgment may only be granted when a fatal defect appears on the face of the record. *Nobel Well Service, Inc. v. Penn Energy, Inc.*, 348 Pa.Super. 267, 270, 502 A.2d 200, 202 (1985) (citations omitted). In reviewing a denial of a petition to strike judgment, we may only reverse the trial court if it committed an abuse of discretion. "The trial court abuses its discretion when it misapplies the law or when a manifestly unreasonable,

biased, or prejudiced result is reached." *Id.*, 348 Pa.Superior Ct. at 271, 502 A.2d at 202.

■ In his first issue DeCoatsworth contends that Odessa was an indispensable party to her husband's suit because their house was owned as a tenancy by the entireties. We agree. An indispensable party is one whose " 'rights are so connected with the claims of the litigants that no decree can be made between them without impairing such rights.' " [8] *Patwardhan v. Brabant,* 294 Pa.Super. 129, 131–132, 439 A.2d 784, 785 (1982) (citations omitted). Here, Odessa's rights were impaired. Louis, in his name alone, was awarded the $35,000.00 on the counterclaim; Odessa was awarded nothing. As one-half owner of the property, Odessa is entitled to one-half of the value of it. Furthermore, as our supreme court stated, "[o]ne must be joined who otherwise, not being bound by the decree, might assert a demand against the principal defendant which would be inequitable after the latter's performance of a decree in favor of the plaintiff." *Hartley v. Langkamp & Elder,* 243 Pa. 550, 555, 90 A. 402, 403 (1914). The court continued:

> A party is indispensable when he has such an interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that the final determination may be wholly inconsistent with equity and good conscience ... The rule as to indispensable parties is neither technical nor one of convenience; it goes absolutely to the jurisdiction, and without their presence the court can grant no relief. Thus where the object of a bill

8. In a footnote to this quotation the *Patwardhan* court suggested that [i]ndeed, the effect on one's rights may be of constitutional dimension. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). 294 Pa.Super. at 132, 439 A.2d at 785. We, however, are basing our decision solely on the law of the Commonwealth.

is to divest a title to property, the presence of those holding or claiming such title is indispensable.

*Id.*, 243 Pa. at 556, 90 A. at 403–04; *see also E–Z Parks, Inc. v. Phila. Parking Authority,* 103 Pa.Cmwlth 627, 521 A.2d 71 (1987), *alloc. den.* 517 Pa. 610, 536 A.2d 1334 (1987). In this case, the failure to join Odessa did, indeed, lead to a final determination that is wholly inconsistent with equity and good conscience. *Hartley, supra.*

The essential characteristic of a tenancy by the entirety is that "each spouse is seized *per tout et non per my,* i.e. of the whole or entirety and not of a share, moiety or divisible part." *In Re Gallagher's Estate,* 352 Pa. 476, 478, 43 A.2d 132, 133 (1945) (citations omitted). "A tenancy by the entireties is a unique form of co-ownership grounded in the common law concept that *husband and wife were but one legal entity." Clingerman,* 513 Pa. at 183, 519 A.2d at 380 (emphasis added). In the seminal case of *Magee et ux. v. Morton B. & L. Ass'n.,* 103 Pa.Super. 331, 158 A. 647 (1931), this court held:

> No authority exactly on point has been cited by counsel; nor have we been able to find a precedent in which an estate by entireties was involved. There is however authority for holding that in a joint tenancy the joint tenant must join, and be joined, in real, mixed and personal actions: *Milne v. Cummings,* 4 Yeates 577. This case is cited in *Mobley v. Bruner,* 59 Pa. 481, 484, where it is said: *"Even joint tenants, who are regarded as having one entire and connected right,* and are said to be seized *per my and per tout,* each having the entire possession as well of every parcel as of the whole, *cannot sue separately for themselves,* or for the joint benefit of themselves and their fellows, *but must join and be joined in all actions respecting the estate:* 1 Tho. Co. Litt. 736." ... *These principles apply with even greater force to an estate by the entireties.* (emphasis added).

*Id.,* 103 Pa.Superior Ct. at 335–337, 158 A. at 648.

In addition, Pennsylvania Rule of Civil Procedure 2227 provides:

Rule 2227. Compulsory Joinder.

(a) *Persons having only a joint interest* in the subject matter of an action *must be joined* on the same side as plaintiffs or defendants.

(b) If a person who must be joined as a plaintiff refuses to join, he shall, in a proper case, be made to join as a defendant or an involuntary plaintiff when the substantive law permits such involuntary joinder.

Pa.R.C.P. 2227 (emphasis added).

Here, Odessa had more than a joint interest; she was owner of an undivided one-half interest in the entireties property which was the subject of her husband's counterclaim. Thus, as Louis was alleging fraud in the sale of their entireties property, Odessa's joinder was compulsory, for under the law governing tenancy by the entirety in the Commonwealth, Louis and Odessa were "an indivisible whole, vested in two persons actually distinct, *yet to legal intendment one and the same." Beihl v. Martin,* 236 Pa. 519, 522, 84 A. 953, 954 (1912) (emphasis added). Moreover, this court has held, with respect to the parties to a tenancy by the entireties, that

> [e]ach one, in the eyes of the law, is considered to be the owner of the entire property and, because of this unity of estate, *any action brought for the protection or preservation of such property must be brought in the name of both spouses.*

*Stitzinger v. Stitzinger Lumber Co., Inc.,* 187 Pa.Super. 453, 456, 144 A.2d 486, 488 (1958) (emphasis added); *see also Brandt v. Hershey,* 198 Pa.Super. 539, 541, 182 A.2d 219, 221 (1962) (listing cases in which a plaintiff-wife brought an appropriate action to preserve entireties property but the trial court dismissed the action, pursuant to Pa.R.C.P. 2227, because of the plaintiff's failure to join her husband as a co-plaintiff.)

Appellee Louis Jones disagrees, contending that once he and Odessa had signed the deed, the tenancy by the entire-

ties was destroyed.[9] This contention lacks merit. Louis cannot claim that there was fraud in the transaction which deprived him of title to his house and simultaneously assert that the entireties estate was terminated by his and his wife's joint conveyance in that same transaction. *The very fraud that caused the jury to award Louis $35,000.00 in damages is the same fraud that invalidated the joint conveyance that Louis claims destroyed the entireties estate.* The titleholders of the property, Louis and Odessa Jones as tenants by the entireties, were both victims of the fraud in the transaction, and any suit or counterclaim by the titleholder must include Louis *and* Odessa.[10] *Magee, supra; Stitzinger, supra.*

 It is important to note that when property is held in a tenancy by the entirety

either spouse presumptively has the power to act for both, so long as the marriage subsists, in matters of entireties, without any authorization, provided the fruits or proceeds of such action inures to the benefit of both and the estate is not terminated. But neither may by such action destroy the true purpose of the estate by attempting to convert it or a part of it, in bad faith, into one in severalty.

*Gallagher,* 352 Pa. at 479, 43 A.2d at 134, citing *Madden, supra; cf. Pastore v. Forte,* 104 Pa.Super. 55, 158 A. 649 (1932) (holding that when wife sued to preserve entireties property and attempted to join husband as party plaintiff,

**9.** In her opinion of July 20, 1988, Judge Moss, referring to Louis, states: *"nor was he aware* that by signing the blank deed Alper would take title and transfer it to DeCoatsworth. His understanding was *title would remain with him* and the deed was just 'insurance.'" In light of Judge Moss's comment, which is supported by the record, Louis's contention is disingenuous, at best.

**10.** The record clearly reveals that the trial court recognized Odessa was a victim of DeCoatsworth's fraud. As Judge Moss states in her opinion of July 1988:

Further evidence of fraud occurred when Alper contacted Odessa Jones, Jones' estranged wife. Alper solicited her as co-owner of said property to also sign the deed. In consideration Mrs. Jones received One Thousand Dollars ($1,000.00) which can be interpreted as nothing more than a bribe.

husband had no right to refuse joinder and no legal right to discontinue his wife's suit); *accord Sielecki v. Sielecki,* 107 Pa.Super. 291, 163 A. 375 (1932). Thus, either spouse may lease the property and collect the rent, *O'Malley v. O'Malley,* 272 Pa. 528, 116 A. 500 (1922), or, when they have reserved the power to do so, either spouse may withdraw funds from an entireties account, *Berhalter v. Berhalter,* 315 Pa. 225, 173 A. 172 (1934), provided that the power to lease or to withdraw funds is used in good faith for the mutual benefit of both tenants. *Id.* However, *"[t]he interest of neither may be affected without notice to both and both are necessary to litigation respecting the assets held by the entireties." Fitzpatrick v. Fitzpatrick,* 181 Pa.Super. 581, 584, 124 A.2d 709, 710 (1956) (citations omitted) (emphasis added); *Wallaesa v. Wallaesa,* 174 Pa.Super 192, 197, 100 A.2d 149, 152 (1953); *Madden, supra.*

▇▇▇ In a companion case, *Jones v. Alper,*[11] No. 4901, December Term 1985, Philadelphia, Louis sued Alper for

**11.** In a memorandum decision filed on January 10, 1992, a panel of this court reversed Judge Hill's decision and reinstated the jury verdict in favor of Louis Jones. The panel stated:

> Instantly, we conclude that appellant and his wife's conveyance, as co-grantors, of the residential property to DeCoatsworth terminated their estate by the entireties. Appellant does not assert any claim in this action on his wife's behalf. Appellant's fraud action asserts only his personal tort claim against appellant. This action is not about setting aside the transfer or rescinding the agreement of sale to recover title to the property. **Rather, appellant's action admits the validity of the transfer and elects as a remedy recovery of damages.** *Silverman v. Bell Sav. & Loan Ass'n,* 367 Pa.Super. 464, 475, 533 A.2d 110, 116 (1987). Since the parties' joint conveyance severed the entireties estate and appellant does not request reinstatement of prior ownership rights, appellant's wife is not an indispensable party to appellant's personal tort claim for fraud.

In *Silverman,* the plaintiffs, Louis and Celia Silverman, were misled as to the zoning classification of real estate they purchased. This court found the material misrepresentation to be fraudulent, and stated:

> Recission, of course, is not the only remedy available to a defrauded plaintiff. Where it is determined that recission is not appropriate, or where plaintiff elects to affirm the contract, damages at law may be awarded.

*Id.* We are perplexed by the panel's conclusion, and find *Silverman* to be inapposite. In *Silverman,* husband and wife were co-owners of the

fraud for his part in the transaction. After a trial in June of 1990 (two and one-half years after the DeCoatsworth trial), the jury awarded Louis $1.00 in compensatory damages and $18,000.00 in punitive damages. Alper filed posttrial motions in which he again raised the issue of Louis's failure to join Odessa, Louis's wife and entireties co-tenant, as an indispensable party. The Honorable Louis G. Hill determined that when real or personal property held in tenancy by the entireties is the subject of litigation, the absent spouse must be joined as an indispensable party. Without both spouses in the litigation, Judge Hill found, the trial court lacked subject matter jurisdiction. Judge Hill ordered Louis to join Odessa as an indispensable party, but, in Judge Hill's words, "Counsel for plaintiff blatantly, if not contemptuously, refused to obey this order...." As a result of Louis's refusal to join entireties co-tenant, Odessa, as an indispensable party, Judge Hill granted Alper's motion for judgment notwithstanding the verdict.

 Unlike Alper in the companion case, here DeCoatsworth failed to raise the issue of joining Odessa as an indispensable party at any point in the trial or appeal process.[12] He raised the issue for the first time on collateral appeal before motions court in his petition to strike the trial court judgment. Ordinarily such tardiness would preclude our review. However, Pennsylvania Rule of Civil Procedure 1032 provides in relevant part:

> property and husband and wife together sued Bell Savings. Therefore, *both* could logically—and legally—affirm the agreement of sale.
> Conversely, in *Jones v. Alper,* Louis Jones filed suit in his name alone, and according to the panel, reaffirmed the agreement of sale in his name alone. This he cannot do. Louis and Odessa Jones owned the property as tenants by the entireties. Therefore, *both* Louis *and* Odessa would have to affirm the contract of sale, for "each spouse is seised ... of the whole or of the entirety and *not* of a share, moiety or divisible part." *Gallagher,* 352 Pa. at 478, 43 A.2d at 133 (emphasis added).

**12.** In his brief to this court DeCoatsworth claims that, despite different attorneys handling his case over the years, it was not until Alper's case went to trial that he learned of the concept of indispensable parties and its applicability to tenancies by the entireties.

A party waives all defenses and objections which he does not present either by preliminary objection, answer or reply, *except*

*　　*　　*　　*　　*　　*

(2) that *whenever* it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that *there has been a failure to join an indispensable party,* the court shall *dismiss the action.*

Pa.R.C.P. 1032(2) (emphasis added).

There is wide support for rule 1032 in the case law. Our supreme court has repeatedly stated:

> It has long been established that unless all necessary and indispensable parties are parties to the action, a court is powerless to grant relief. *Reifsnyder v. Pittsburgh Outdoor Advertising Company,* 396 Pa. 320, 152 A.2d 894 (1959), and *Powell v. Shepard,* 381 Pa. 405, 113 A.2d 261 (1955). While this particular objection *was not raised in the trial court on appeal,* the absence of an indispensable party goes absolutely to the court's jurisdiction and *the issue should be raised sua sponte.* (emphasis added).

*Tigue v. Basalyga,* 451 Pa. 436, 438, 304 A.2d 119, 120 (1973); *Pocono Pines Corp. v. Pennsylvania Game Commission,* 464 Pa. 17, 21, 345 A.2d 709, 711–712 (1975); *Columbia Gas, Etc. v. Diamond Fuel,* 464 Pa. 377, 379, 346 A.2d 788, 789 (1975).

In denying DeCoatsworth's petition to strike the judgment, the motions court relied heavily on the argument that once the process of direct appeals has been completed, in the interest of finality of judgments and judicial economy, no further petitions relating to the same case can be heard. The motions court also believed it lacked jurisdiction to review the issue presented, stating in its opinion: "There is no case law directly on point to confirm this Court's suspicions that it lacks jurisdiction. Once the Supreme Court denied allocatur a logical and practical interpretation would indicate litigation has been terminated." We cannot agree.

604

"[I]t is never too late to attack a judgment or decree for want of jurisdiction. That question is always open." *In Re Simpson's Estate,* 253 Pa. 217, 225, 98 A. 35, 38 (1916). "Such a judgment is entitled to no authority or respect, and is subject to impeachment in collateral proceedings at any time by one whose rights it purports to affect." *Moskowitz's Registration Case,* 329 Pa. 183, 190, 196 A. 498, 502 (1938). "The want of jurisdiction over the subject matter may be questioned at any time. It may be questioned either in the trial court, before or after judgment, or for the first time in an appellate court, and *it is fatal at any stage of the proceedings, even when collaterally involved....*" *In Re Patterson's Estate,* 341 Pa. 177, 180, 19 A.2d 165, 166 (1941) (emphasis added). Moreover, is "well settled that a judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void and is subject to attack by the parties in the same court or may be collaterally attacked at any time." *Com. ex rel. Howard v. Howard,* 138 Pa.Super. 505, 508, 10 A.2d 779, 781 (1939).

"For a judgment to be void on its face, one or more of three jurisdictional elements must be absent: the court's jurisdiction of the parties; the court's jurisdiction of the subject matter; or the power or authority to render the particular judgment." *Roberts v. Gibson,* 214 Pa.Super. 220, 226, 251 A.2d 799, 802 (1969). In the case at hand, due to the unique characteristics of tenancy by the entireties, it appears on the face of the record that Odessa Jones was an indispensable party in her husband's counterclaim for fraud in the transaction involving their entireties property. As a result of the absence of subject matter jurisdiction, the trial court's judgment is void on its face, *id.,* and "should have been stricken off by the [motions] court for want of jurisdiction apparent on the face of the record." *Baker v. Carter,* 103 Pa.Super. 344, 346, 157 A. 211, 212 (1931). "It is never too late to attack a judgment for want of jurisdiction of either the subject matter or the person for a fatal deficiency

appearing on the face of the record." *Mamlin v. Tener,* 146 Pa.Super. 593, 596, 23 A.2d 90, 92 (1941).

Here, the defect cannot be remedied by ordering joinder of Odessa for a new trial. The statute of limitations for fraud is two years. 42 Pa.C.S.A. § 5524. Since the alleged fraud occurred in December of 1983, the statute of limitations long ago expired. As Odessa is now barred from pursuing an independent action against DeCoatsworth, her compulsory joinder in Louis's counterclaim is also barred. *See* Goodrich Amram 2d § 2232(c):3; *see also Moorehead v. Lopatin,* 300 Pa.Super. 81, 85, n. 3, 445 A.2d 1308, 1310, n. 3 (1982) (listing trial court cases in which complaints were dismissed or summary judgment granted for failure to join an entireties tenant before expiration of the statute of limitations).

We concur with our brethren in Commonwealth Court who stated:

> We are distressed by the posture in which this case reaches our Court. We do not understand how this litigation has proceeded to this point without joinder.... The procedural setting in which this case reaches us does not control our disposition on appeal. "The absence of indispensable parties goes absolutely to the jurisdiction, and without their presence the court can grant no relief." *Powell v. Shepard,* 381 Pa. 405, 412, 113 A.2d 261, 264 (1955) (citations omitted).... Without the joinder of ... as a party, the court of common pleas was without jurisdiction to enter the decree and must therefore be reversed.

*Posel v. Redevelopment Authority of City of Philadelphia,* 72 Pa.Cmwlth. 115, 119, 456 A.2d 243, 246 (1983).

We conclude that the motions court misapplied the law in denying DeCoatsworth's petition to strike the trial court judgment for lack of subject matter jurisdiction for failure to join an indispensable party. *Nobel Well Service, supra.* A fatal defect appears on the face of the record. *Id.; Roberts, supra; Baker, supra.* We, therefore, reverse the motions court judgment and remand to the motions court

with instructions to strike the trial court judgment. As we have found merit in this appeal, we reverse the motion court's order levying attorney's fees against DeCoatsworth, and we deny appellee Louis Jones's petition for attorney fees.

Order denying petition to strike judgment reversed; order to pay attorney fees reversed; petition for attorney fees denied. Jurisdiction relinquished.

TAMILIA, J., files a concurring statement.

FORD ELLIOTT, J., files a dissenting opinion.

TAMILIA, Judge, concurring:

I join Cirillo, J. Although normally a memorandum may be cited as authority if it is the law of the case, as concluded by Judge Cirillo, I do not believe a collateral judgment is binding when it is fatally flawed for lack of jurisdiction. I also do not believe a memorandum may be incorporated in a dissenting opinion to be filed with a majority opinion. It would appear to be sufficient to cite and quote the significant holdings of the memorandum.

FORD ELLIOTT, Judge, dissenting.

Although I might agree with the rationale and the result reached by the majority under different circumstances, I feel I am bound by the decision of another panel of this court on the very issue presented herein and on which the majority disposition rests. On January 10, 1992, in the case of *Jones v. Alper*, No. 832 Philadelphia 1991, the panel of Cavanaugh, McEwen and Olszewski, JJ., filed a Memorandum decision in a companion case. In reviewing Judge Hill's decision in the court below, which is referenced by the majority herein, the *Jones* panel determined that Odessa Jones was not an indispensable party to appellant's personal tort claim for fraud. Upon reviewing the same factual question involving the same parties to the same real estate transaction, I consider myself bound by the prior panel's decision. For explanatory purposes therefore, I incorporate

and adopt the Memorandum decision of January 10, 1992 as a part of this Dissenting Opinion.

MEMORANDUM:

Filed January 10, 1992

Appellant, Louis E. Jones, appeals from the order of the Philadelphia County Court of Common Pleas granting appellee, Alan Alper's, motion for judgment n.o.v. On appeal, appellant contends the trial court erroneously concluded that appellant's wife, Odessa Jones, was an indispensable party and appellant's failure to join his wife as a party-plaintiff was a fatal defect justifying entry of judgment n.o.v. We agree with appellant that the trial court erred in granting judgment n.o.v.

In December of 1983, appellant and his wife entered into an agreement of sale with appellee to convey residential property, which they owned as tenants by the entireties. The real estate, located at 1857 Champlost Avenue in Philadelphia, includes a house and surrounding property occupied by appellant.[1] The agreement of sale provided that conveyance was contingent on appellee's successful stay of a sheriff's sale. Other provisions of the agreement included appellee's payment of $1 plus other debts secured by the property, appellant's promise to make monthly rental payments, and appellant's option to repurchase the property. At appellee's request, appellant and his wife signed a blank deed which omitted the grantors' names, the grantee's name, the sales price and the description of the property.

Appellee successfully stayed the sheriff's sale. Appellee then sold his interest in the agreement of sale with appellant to a third party, Charles DeCoatsworth. Appellee filled in the deed, which was blank except for the signatures of appellant and his wife, with names of the grantors as "LOUIS EDWARD JONES and ODESSA B. JONES, his

1. Appellant's wife did not reside on the property with appellant when they executed the agreement of sale. Appellant and his wife had been separated at least 20 years at the time of transfer. Appellee paid appellant's wife $1000 for her signature on the agreement of sale and the deed.

wife, and ALPER ASSOCIATES, INC." (Thus adding Alper Associates, Inc. as a *grantor* to the deed and skipping the transaction in which appellee was the grantee in the sale from appellant to appellee, thereby avoiding payment of transfer tax on the sale.) Appellee also filled in the deed with the name of the grantee as Charles DeCoatsworth, a sales price of $10,000 and a description of the property.

On January 5, 1984, at a real estate settlement, the property was conveyed from appellant, his wife and appellee to DeCoatsworth. The deed was duly recorded the same day. Appellant and his wife did not attend the real estate settlement because appellee did not notify them of the scheduled date. Appellee failed to discharge all the debts secured by the property as promised in the agreement of sale with appellant and his wife. Appellant and his wife did not receive any money from the sale to DeCoatsworth. Appellant continued to live on the property but refused to pay rent.[2]

On December 31, 1985, appellant filed suit against appellee for fraud.[3] During the trial, the court ordered appellant to join his wife as an indispensable party-plaintiff. Appellant failed to comply and the court deferred the matter until after trial. On June 20, 1990, following an eight day trial, the jury found appellee defrauded appellant and awarded appellant $1 in compensatory damages and $18,000 in punitive damages.

Appellee filed several post-trial motions, including a challenge to the court's subject matter jurisdiction due to appel-

[2]. In September of 1984, DeCoatsworth sued to evict appellant from the property. Appellant received $35,000 in damages on a counterclaim for fraud and retained possession of the property. On appeal to this Court, we affirmed in a memorandum decision, *DeCoatsworth v. Jones*, 394 Pa.Super. 635, 569 A.2d 1388 (1989) (Table).

[3]. Appellant also filed suit against F. Russell Curtis, III, the notary public who acknowledged the signatures of appellant and his wife on the deed, the Frankford Abstract Company and its affiliate Commonwealth Land Title Insurance Company, which insured title. These parties settled their claims with appellant prior to trial. At trial, appellant withdrew additional counts alleging unconscionability of contract, and violations of the Installment Land Contract Law and the Federal Truth in Lending Act.

lant's failure to join his wife as an indispensable party. The court granted appellee's motion for judgment n.o.v. based on the court's conclusion that the fraud was committed on the "entireties," and thus, appellant's wife was an indispensable party-plaintiff to appellant's action.

On appeal, appellant contends transfer of the property to DeCoatsworth terminated the tenancy by the entireties and therefore, appellant was entitled to pursue his personal tort claim for fraud without joining his wife.

A judgment n.o.v. may be entered only in a clear case where the facts are such that no two reasonable persons could fail to agree that the verdict is improper, and should not be entered in cases where the evidence is conflicting upon material fact. *Kearns v. Philadelphia Life Insurance Co.*, 401 Pa.Super. 292, 295, 585 A.2d 53, 54 (1991). On appeal from an order granting judgment n.o.v., a reviewing court is required to consider the evidence, together with all reasonable inferences therefrom, in the light most favorable to the verdict winner. *Id.*, 401 Pa.Superior Ct. at 295, 585 A.2d at 54. *Trans Canada Credit Corp. Ltd. v. Kosack*, 404 Pa.Super. 401, 406–07, 590 A.2d 1295, 1298 (1991).

A tenancy by the entireties exists when real or personal property is held jointly by a husband and wife. *Clingerman v. Sadowski*, 513 Pa. 179, 183, 519 A.2d 378, 380 (1986). A husband and wife do not own separate interests in entireties property and may not independently sever the estate or appropriate property to the exclusion of the other spouse. *Id.*, 513 Pa. at 181–84, 519 A.2d at 380–81.

A tenancy by the entireties is severed only in certain limited circumstances. *Id.*, 513 Pa. at 183, 519 A.2d at 381. *Stop 35, Inc. v. Haines*, 374 Pa.Super. 604, 607, 543 A.2d 1133, 1135 (1988). During the lifetimes of the husband and wife, termination of an entireties estate occurs only by their joint acts. *Estate of Matson*, 374 Pa.Super. 61, 74, 542 A.2d 147, 153 (1988). While both husband and wife are alive, the parties can sever the entireties estate by joint conveyance, divorce, or agreement, express or implied. *Clingerman*, 513 Pa. at 183–84, 519 A.2d at 381. *Stop 35, Inc.*, 374

Pa.Super. at 607, 543 A.2d at 1135. *Fascione v. Fascione,* 272 Pa.Super. 530, 535, 416 A.2d 1023, 1025 (1979).

Instantly, we conclude that appellant and his wife's conveyance, as co-grantors, of the residential property to De-Coatsworth terminated their estate by the entireties. Appellant does not assert any claim in this action on his wife's behalf. Appellant's fraud action asserts only his personal tort claim against appellant. This action is not about setting aside the transfer or rescinding the agreement of sale to recover title to the property. Rather, appellant's action admits the validity of the transfer and elects as a remedy recovery of damages. *Silverman v. Bell Sav. & Loan Ass'n,* 367 Pa.Super. 464, 475, 533 A.2d 110, 116 (1987). Since the parties' joint conveyance severed the entireties estate and appellant does not request reinstatement of prior ownership rights, appellant's wife is not an indispensable party to appellant's personal tort claim for fraud.

At trial, appellant had the burden of proving appellee committed fraud or intent to defraud by clear, precise and convincing evidence. *B.O. v. C.O.,* 404 Pa.Super. 127, 131, 590 A.2d 313, 315 (1991). The elements of fraud are: (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result. *Id.* at 131, 590 A.2d at 315. *Silverman,* at 367 Pa.Super. 470, 533 A.2d at 113 (1987). The jury found appellee defrauded appellant and awarded nominal compensatory and punitive damages. The trial court's opinion concluded the verdict was not against the weight of the evidence despite its entry of judgment n.o.v.

A review of the evidence in the light most favorable to appellant, as verdict winner, reveals the court relied on an erroneous legal conclusion in support of its entry of judgment n.o.v. Since the conveyance terminated the estate by the entireties and appellant affirms the conveyance, we believe the court erred in concluding that the fraud was committed upon the entireties and that appellant's wife is

an indispensable party to appellant's fraud action. Therefore, we conclude the court improperly entered judgment n.o.v. in favor of appellee.

Vacate the entry of judgment n.o.v., reinstate the jury verdict and direct the entry of judgment in favor of appellant.