603 A.2d 587

NIKOLE, INC.

v.

John J. KLINGER and Marguerite Klinger.

Appeal of Marguerite KLINGER, individually
and as administratrix of the Estate of
John J. Klinger, deceased.

John J. KLINGER and Marguerite Klinger

v.

NIKOLE, INC. and Dennis Sakelson.

Appeal of Marguerite KLINGER, individually
and as administratrix of the Estate of
John J. Klinger, deceased.

Superior Court of Pennsylvania.

Argued May 8, 1991.

Filed Jan. 22, 1992.

Reargument Denied March 16, 1992.

Mark Charleston, Philadelphia, for appellant.

Donald A. Semisch, Willow Grove, for appellees.

Before ROWLEY, President Judge, and CIRILLO and JOHNSON, JJ.

ROWLEY, President Judge:

In these consolidated appeals by Marguerite Klinger, individually and as administratrix of the estate of her deceased husband, John Klinger, from judgments entered in favor of Nikole, Inc., and Dennis Sakelson, president of Nikole, Inc., in three suits between the parties, we are called upon to determine the respective rights and obligations of the parties under a lease-purchase agreement for real estate, and a restaurant and bar.

Appellee Dennis Sakelson is the president of appellee Nikole, Inc. (Nikole). On November 28, 1979, John and Marguerite Klinger (the Klingers) entered into a Lease–Purchase Agreement (Agreement) with Nikole for two parcels of property owned by Nikole and located at 228 and 230 North York Road in Hatboro, Pennsylvania, on which a restaurant and bar were operated. Under the terms of the Agreement, the Klingers were to pay Nikole a $15,000 deposit and 120 monthly payments of $1,124 each which included principal and interest. The Klingers were also to pay taxes, insurance, and sewer rentals on the property. Under the terms of the Agreement, once the Klingers made 120 monthly payments, or prepaid the balance due, Nikole was to convey to the Klingers a fee simple title to the premises. In July, 1980, the Klingers took possession of the property and began making the monthly payments.

Bell Savings and Loan Association (Bell) held a blanket first mortgage on the two parcels at issue in the present case and on another parcel of property owned by Nikole located at 232 North York Road. William Pfulb held a blanket second mortgage on the same three properties. On November 1, 1985, a Sheriff's Sale notice was placed on the

property at issue in the present case due to Nikole's default on its mortgage payments to Bell. The Klingers stopped making their monthly payments at that time. Before the Sheriff's Sale took place, however, Mr. Klinger's brother-in-law, Umberto Gagliardi, paid Bell the balance due on the mortgage and took an assignment of the mortgage. On November 25, 1985, Nikole's counsel sent a letter to the Klingers' counsel advising them that Nikole would not pay any further sums on the mortgages held by Mr. Gagliardi and Mr. Pfulb.[1]

Mr. Sakelson, as Nikole's president, and the Klingers then attempted to reach a settlement concerning their respective rights and obligations under the Lease–Purchase Agreement. Pursuant to the proposed settlement agreement, Nikole was to convey to the Klingers the properties located at 228, 230, and 232 North York Road and the Klingers were to assume both the first and second mortgages on these parcels. The proposed settlement agreement was subject to the Klingers being able to obtain financing in a specified amount. In addition, during the period in which Mr. Sakelson and the Klingers were attempting to reach a settlement, the parties agreed that the Klingers were not obligated to make their monthly payments under the Lease–Purchase Agreement and Nikole was not obligated to make the payments due under the mortgage held by Mr. Gagliardi. They also agreed that if the attempt at settlement was unsuccessful, "all rights, obligations and claims that either party may have previously had against the other shall remain in full force and effect...."

The attempts to reach a settlement were unsuccessful and on October 17, 1986, the Klingers filed an action in the trial court at docket number 86–15504 against Nikole, Mr. Sakelson, and his wife, Jeanne. In Count I, the Klingers alleged a cause of action for breach of contract on the part of Nikole and Mr. and Mrs. Sakelson. In Count II, the Klingers alleged various wrongs on the part of Mr. Sakel-

1. Neither Bell, Mr. Pfulb, nor Mr. Gagliardi are parties to these suits or appeals.

son with respect to Nikole, including diversion of corporate funds for his personal use. In their complaint, the Klingers demanded $47,871.89, the amount they had paid to Nikole under the Lease–Purchase Agreement, plus the cost of relocating their business and punitive damages.[2]

On the same day, Nikole, averring a default in payments due from the Klingers under the Lease–Purchase Agreement, filed a complaint in ejectment at docket number 86–15568 with confession of judgment for possession of the premises. On December 8, 1986, Nikole filed a second complaint for money damages with a confession of judgment at docket number 86–17984. In its second complaint, Nikole alleged that the Klingers had failed to make their monthly payments under the Lease Purchase Agreement and demanded $29,014.10, the balance of the monthly payments due plus attorney fees.

In the meantime, Nikole refinanced its mortgage indebtedness and cured its mortgage defaults. The Klingers then amended their complaint to include a request for specific performance as an alternate to the money damages originally requested.

The Klingers filed petitions to open the judgments entered by confession for ejectment and for money damages. The Klingers' petitions were granted and they began paying their monthly payments due under the Agreement into an escrow account beginning with the November, 1986 payment. Subsequently, Mr. Klinger died and Mrs. Klinger stopped making the payments into escrow. The last monthly payment made was the March, 1988 payment.

The three cases in the trial court were consolidated for trial before the court without a jury. At the close of the Klingers' case on liability, the trial court granted Nikole's motion for a directed verdict. After Nikole presented its case, the Klingers orally made a motion for a compulsory nonsuit which was denied. Finding that the Klingers

2. Pursuant to preliminary objections, Count I of the complaint was stricken as to Mr. and Mrs. Sakelson in their individual capacities. Count II was also stricken as to Mrs. Sakelson only. She is no longer a party to this suit or appeal.

breached the Agreement by failing to make their monthly payments since November 1, 1985 (the day the property was posted for Sheriff's Sale), the trial court entered a verdict in favor of Nikole for (1) $75,316.80 (86–17984), which was the sum of the monthly payments provided for by the Agreement for the forty-five months that the Klingers were in possession of the property without making payments to Nikole, and (2) possession of the property (86–15568).[3] After final judgments were entered, Klingers filed these timely appeals.

On appeal, appellant raises the following allegations[4] of trial court error:

A. The trial court abused its discretion in denying appellant's motion for a continuance made on the morning of the first day of trial.

B. The trial court erred in admitting into evidence copies of checks dated October 4, 1985, which were written by John Klinger and made payable to Nikole, Inc. and in determining that those checks constituted a default by the Klingers in the terms of the Lease Purchase Agreement.

C. The trial court erred in refusing to admit into evidence a copy of certain portions of a written agreement entered into between the parties on July 7, 1986, as they contain admissions against interest made by Nikole, Inc.

D. The trial court erred in denying the Klingers' motion for a compulsory nonsuit in Nikole's suit against the Klingers.

3. The Klingers are no longer in possession of the property and the property has been sold by Nikole.

4. Appellant also raises the following three issues: the verdict was against the evidence, the verdict was against the weight of the evidence, and the verdict was against the law. Appellant sets forth no arguments in support of these issues, but, rather, directs us to her arguments in support of the above-mentioned issues. We will therefore not address these issues separately. In addition, appellant raises an issue concerning the trial court's computation of damages. Because of our disposition of this case, we need not consider this final issue.

E. The trial court erred in granting Nikole's motion for a directed verdict in its favor in the Klingers' suit against Nikole and Dennis Sakelson.

After considering these issues, we affirm the judgment insofar as it relates to trial court docket numbers 86–15504 and 86–15568, and we reverse the judgment insofar as it relates to trial court docket number 86–17984. We remand for further proceedings in accordance with this opinion.

## I. Continuance

█ Appellant contends that the trial court erred in denying her motion for a continuance made on the first day of trial after counsel for the Klingers was informed that Mr. Sakelson would not be present at the trial. Klingers' counsel had employed the services of Best Legal Services to serve a subpoena on Mr. Sakelson for his attendance at trial. However, the subpoena was served on Mr. Sakelson's business partner rather than on Mr. Sakelson. Although counsel conceded that Mr. Sakelson was not properly served, he nonetheless requested a continuance, contending that Mr. Sakelson was an indispensable witness whose testimony was required to establish Nikole's default. The trial court denied the request. Appellant argues that the trial court's ruling constitutes reversible error.

"The trial court is vested with broad discretion in the determination of whether a request for a continuance should be granted and an appellate court should not disturb such a decision unless an abuse of that discretion is apparent." *Corbett v. Weisband,* 380 Pa.Super. 292, 315–16, 551 A.2d 1059, 1071 (1989) (quoting *Walasavage v. Marinelli,* 334 Pa.Super. 396, 413, 483 A.2d 509, 518 (1984)), *allocatur denied,* 524 Pa. 607, 569 A.2d 1367 (1989), *allocatur denied,* 524 Pa. 620, 571 A.2d 383 (1989). After reviewing the record, we conclude that the trial court did not abuse its discretion in denying appellant's motion for a continuance.

The Supreme Court of Pennsylvania has set forth the following standard to be followed when a party requests a continuance due to the absence of witnesses:

Such a continuance will be granted only where it is shown that their expected testimony is competent and material, and not merely cumulative or impeaching; that it is credible and would probably affect the result, that it probably can be obtained at a future trial, and that due diligence has been exercised to secure it for the trial, including efforts to subpoena the absent witnesses and to take their depositions.

*Carey v. Philadelphia Transportation Company,* 428 Pa. 321, 324, 237 A.2d 233, 235 (1968) (quoting 4 Standard Pennsylvania Practice 627). In the present case, appellant's unsupported claims that Mr. Sakelson's testimony would be competent and material is not sufficient to warrant a new trial. Furthermore, if Mr. Sakelson's testimony was so vital to the Klingers' case, they should have confirmed that the subpoena was properly served. We find no abuse of discretion in the trial court's decision to deny appellant's motion for a continuance.

## II. Evidentiary Rulings

Appellant raises two allegations of trial court error regarding evidentiary rulings. First, appellant argues that the trial court erred in admitting into evidence copies of checks dated October 4, 1985, which were written by Mr. Klinger and made payable to Nikole, and in determining that those checks constituted a default by the Klingers under the terms of the Agreement. During the Klingers' case against Nikole, counsel for Nikole, on cross-examination, questioned Mrs. Klinger about these checks. Both of the checks were dated October 4, 1985; however, one was deposited in October and one was deposited in November. Nikole's counsel introduced these checks because they were returned for non-sufficient funds. Klingers' counsel objected to the introduction of these checks because, in its complaint, Nikole alleged that the Klingers breached the Agreement as of November, 1985. Therefore, counsel argued, checks written in October, 1985 were irrelevant.

The trial court determined that the testimony concerning the check that was deposited in October, before the alleged breach, should be stricken, but the testimony concerning the check that was deposited in November, after the alleged breach, should not be stricken. Although the testimony concerning the second check was not stricken, the check was not admitted into evidence as counsel for Nikole decided that it was not crucial to his case. Moreover, although appellant contends that these checks influenced the trial court's decision to render a verdict in favor of Nikole, there is nothing in the record to support this assertion. We find no error in the trial court's rulings regarding these checks.

Appellant also contends that the trial court erred in refusing to admit into evidence a copy of certain portions of the proposed settlement agreement between the parties claiming that they contain admissions against interest made by Nikole.

Appellant attempted to introduce portions of the proposed settlement agreement between the parties alleging that they contained factual admissions made by Nikole. The trial court refused to admit any part of the agreement because it was executed in an attempt to settle the dispute. Appellant correctly cites *Rochester Machine Corporation v. Mulach Steel Corporation*, 498 Pa. 545, 449 A.2d 1366 (1982), for the proposition that, while an offer to compromise is not admissible in evidence as proof of liability, a distinct admission of fact which accompanies an offer to compromise is admissible.[5] However, we are not convinced that the portions of the settlement agreement which appellant wished to admit constitute distinct admissions of fact.

In *Rochester Machine*, Rochester Machine Corporation, through its attorney, sent to Mulach Steel Corporation a letter which listed damages allegedly caused by Mulach. In response, Mulach, through its attorney, sent a letter consist-

---

5. In *Rochester Machine,* the Supreme Court initially decided that the document which contained the admissions was not an offer to compromise. Therefore, the discussion relied upon by appellant was not necessary to the Court's disposition of the case.

ing of an item by item response to each claim of damage. With respect to some of the items, Mulach responded, "Mulach accepts responsibility." Under those circumstances, the court determined that "[t]he specific acceptance of responsibility for specific items of damages is fairly construed as a distinct admission." *Id.*, 498 Pa. at 552, 449 A.2d at 1369.

The statements at issue in the present case, on the other hand, were contained in "whereas clauses" in the settlement agreement. Specifically, these clauses stated the following:

> WHEREAS, KLINGER has complied with all of the terms and provisions of said lease purchase agreement from its inception until approximately November of 1985, when KLINGER discontinued monthly payments to NIKOLE, INC. for the reasons set forth herein below; and, WHEREAS, NIKOLE, INC. defaulted in the terms and provisions of its mortgage agreement with BELL SAVINGS AND LOAN ASSOCIATION, resulting in proceedings instituted by BELL to expose premises 228–230–232 North York Road, Hatboro, Pennsylvania, to a Sheriff's Sale; and, ... WHEREAS, NIKOLE is in default on its payments to UMBERTO GAGLIARDI since November of 1985; and, WHEREAS, NIKOLE, INC. is also in default with respect to the mortgage held by WILLIAM PFULB; and, WHEREAS, both GAGLIARDI and PFULB have threatened to proceed with supplemental foreclosure proceedings in order to protect their respective interests. . . .

In this situation, we do not agree with appellant that these statements were admissible as distinct factual admissions by Nikole.[6] These statements were more in the nature of legal conclusions than factual admissions. Furthermore,

6. Although the trial judge stated in his opinion that the statements were inadmissible because they were contained in a settlement agreement, at trial he stated that a whereas clause is not a factual admission. Notes of Testimony 7/20/89 at 54. Moreover, the Superior Court may affirm for a reason other than that applied by the trial court. *Gerace v. Holmes Protection of Philadelphia*, 357 Pa.Super. 467, 516 A.2d 354 (1986), *allocatur denied*, 515 Pa. 580, 527 A.2d 541 (1987).

the clauses contain some factual statements that are merely cumulative of other evidence in the record. Therefore, we conclude that the statements were properly excluded and their exclusion, even if improper, was harmless.[7]

### III. Nikole v. Klingers—Compulsory Nonsuit

■■■ Appellant also contends that the trial court erred in denying her motion for a compulsory nonsuit in Nikole's suit against the Klingers. The Klingers had argued at trial that the failure of Nikole to pay the mortgages on the property and its subsequent letter stating that it would not make any more payments on the mortgages constituted a breach of the Agreement. In response, the trial court stated the following:

> Assuming for the sake of argument that Nikole, Inc.'s letter in November, 1985 stating its intention to stop mortgage payments is an anticipatory repudiation of the agreement, the Klingers are not excused from their obligation to pay rent on the property. The Klingers, however, continued to remain in possession of the property until July of 1989 and complied with Judge Vogel's Order to place monthly rents in an escrow account only until March of 1988. The Klingers have not provided the Court with any authority, and we do not believe that there is any, which entitles one party to treat the conduct of another party as a repudiation of the contract while continuing to receive the benefits under it, in this case remaining in possession and operating a bar and restaurant.

Trial Court Opinion 7/11/90 at 6–7 (citations to record omitted). We agree that the Klingers were not entitled to remain in possession of the property without compensating Nikole. However, the trial court failed to give effect to Nikole's anticipatory repudiation. After reviewing the record, we conclude that Nikole repudiated the Agreement.

It is undisputed that Nikole failed to pay its mortgages. Nikole contends that, because the Klingers were only ten-

7. Also see part III, post.

ants and did not lose possession of the property when Nikole failed to make its mortgage payments, it did not breach the Agreement. However, the Agreement was not merely a lease, but was a lease purchase agreement. "[I]n construing a contract, each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument." *Marcinak v. S.E. Greene School District*, 375 Pa.Super. 486, 491, 544 A.2d 1025, 1027 (1988). Although the monthly payments were termed "rent" and Nikole was designated as lessor while the Klingers were designated as lessees in one part of the Agreement, the Agreement also provided for "the price to be paid", a $15,000 down payment, and "monthly installments of principal and interest". In addition, Nikole was designated as "Seller" and the Klingers as "Buyer". For these reasons, we disagree with Nikole that the Klingers were *mere* tenants and that the Agreement was not breached by it because the Klingers had remained in possession of the property. The Klingers had an equitable interest in the property which Nikole jeopardized by failing to pay its mortgages.

Although Nikole's obligation to pay its mortgages was not directly addressed in the Agreement, the Agreement did provide that, when the Klingers had made 120 payments or prepaid the balance due, Nikole would convey good title to them. Accordingly, Nikole was obligated to retain the ability to convey good title to the Klingers. Failing to pay its mortgages, with a resulting foreclosure, clearly would jeopardize Nikole's ability to convey the good title as it was obligated to do. In fact, the Sheriff's Sale was avoided through the Klingers' efforts rather than through any action on the part of Nikole when Mr. Klinger arranged for Mr. Gagliardi to take an assignment of the Bell mortgage. Klingers' counsel, representing Mr. Gagliardi, then sent a letter dated November 21, 1985 to Nikole informing Nikole that its mortgage payments would thereafter be made to Mr. Gagliardi. On November 25, 1985, Nikole's counsel

responded that "Nikole, Inc. will not pay any further sums on the property. It has lost money for seven years and cannot continue." This statement, in light of the fact that Nikole had defaulted in its mortgage payments with the resulting threat of a Sheriff's Sale, is "sufficiently positive to be reasonably interpreted to mean that [Nikole would] not ... perform." *Oak Ridge Construction Company v. Tolley*, 351 Pa.Super. 32, 38, 504 A.2d 1343, 1346 (1985) (*quoting* Restatement (Second) of Contracts § 250 comment b.) Therefore, Nikole repudiated the Agreement and was not entitled to recover damages under that Agreement. *See Ott v. Buehler*, 373 Pa.Super. 515, 518, 541 A.2d 1143, 1145 (1988) ("[A] party who has materially breached a contract cannot complain if the other party refuses to perform his obligations under the contract."); *Hampton v. Minton*, 785 S.W.2d 854, 857 (Tex.App.—Austin, 1990) ("[W]hen a party to a contract seeks to enforce the agreement or to recover damages for breach of the agreement, that party must prove that he has performed all of his own obligations under the contract."); *Carr v. Norstok Building Systems*, 767 S.W.2d 936, 939 (Tex.App.—Beaumont, 1989) ("[A] party to a contract cannot enforce it or recover damages for its breach unless that party shows that he or she has performed the obligations imposed upon him."). Accordingly, the trial court erred in denying appellant's motion for a compulsory nonsuit in Nikole's suit against the Klingers.

## IV.   Klingers v. Nikole

■ Appellant argues that the trial court erred in granting Nikole's motion for a directed verdict in the Klingers' suit against Nikole. Appellant makes two arguments to support this allegation of error. First, appellant contends that the trial court erred "jurisdictionally" in granting Nikole's motion for a directed verdict because the trial judge was sitting without a jury. Appellees correctly assert that no objection to this procedure was made at trial, therefore, the issue was waived.

■ In addition, we find this claim to be without merit. Pa.R.C.P. 226 states, "At the close of all evidence, the trial judge may direct a verdict upon the oral or written motion of any party." Pa.R.C.P. 1038 states, "[T]he trial of an action by a judge sitting without a jury shall be conducted as nearly as may be as a trial by jury is conducted and the parties shall have like rights and privileges...." Clearly, neither rule disallows a directed verdict in a nonjury trial.

■ Moreover, appellant has not demonstrated that she was prejudiced by this procedure. Her case on liability was completed when the motion was granted. The outcome of the case would have been the same if the trial court had denied Nikole's motion, Nikole had rested, and the court then entered a verdict in Nikole's favor. Accordingly, we conclude that the trial court did not commit reversible error by granting Nikole's motion for a directed verdict.

In addition, appellant contends that the trial court erred as a matter of substantive law in granting Nikole's motion for a directed verdict. For the following reasons, we disagree.

■ Once Nikole repudiated the Agreement, as discussed above, the Klingers could have either accepted the rescission of the contract and sought restitution or brought an action for damages under the contract. *See Durflinger v. Statesman Life Insurance Company,* 100 Or.App. 581, 787 P.2d 892, 894 (1990); *see also Eklund v. Koenig and Associates, Inc.,* 153 Wis.2d 374, 451 N.W.2d 150, 153 (1990). Although the Klingers treated the contract as breached by discontinuing their monthly payments and by eventually filing a complaint against Nikole for breach of contract, they continued to reap the benefits of the Agreement by remaining in possession of the property. In effect, the Klingers attempted to treat the Agreement as breached for one purpose while treating it as in effect for another purpose. By remaining in possession without compensating Nikole, the Klingers failed to perform their own obligations under the Agreement and were not entitled to collect dam-

ages. *See Ott, supra; Hampton, supra; Carr, supra.* Therefore, the trial court did not err in granting Nikole's motion for a directed verdict in its favor in the Klingers' suit against Nikole and Mr. Sakelson.[8]

## CONCLUSION

For the above reasons, we conclude that neither party was entitled to collect damages *under the Agreement.* "[W]hen parties to a contract each commit a material breach, the law will give relief to neither." *Cottman Transmission Systems, Inc. v. Dubinsky,* 550 F.Supp. 133 (W.D.Pa.1982). However, "[i]f both contracting parties materially breach the contract, recovery, by either party, is limited to that benefit which is in excess of the loss said party has caused by his own breach." *In re Spagnol Enterprises, Inc.,* 81 B.R. 337, 353 (W.D.Pa.1987). *See also Lancellotti v. Thomas,* 341 Pa.Super. 1, 491 A.2d 117 (1985). Because the Agreement was not successfully completed, Nikole is, as the trial court ordered, entitled to possession of the property. Furthermore, appellant did remain in possession of Nikole's property from 1985 through 1989 and Nikole should be compensated at the fair rental value for the Klingers' use of its property. Accordingly, we remand for a determination of the recovery, if any, due each party and the entry of an appropriate order.

The final judgment is affirmed as to docket numbers 86–15568 and 86–15504 and reversed as to docket number 86–17984 and the case is remanded for further proceedings. Jurisdiction is relinquished.

---

**8.** Once the trial court determined that Nikole was not liable, the Klingers did not pursue their claim against Mr. Sakelson.