644 A.2d 770

Scott T. BARNES

v.

Stephen A. McKELLAR, Frances A. McKellar,
and Keith McKellar, Appellants.

Scott T. BARNES, Appellant

v.

Stephen McKELLAR, Frances A. McKellar,
and Keith McKellar.

Superior Court of Pennsylvania.

Submitted Feb. 22, 1994.

Filed July 8, 1994.

598

Clinton L. Johnson, Chester, for McKellars.

Robert M. Firkser, Media, for Barnes.

Before ROWLEY, President Judge, and SAYLOR and BROSKY, JJ.

ROWLEY, President Judge:

Scott T. Barnes, plaintiff in the trial court and appellee/cross-appellant in the appeals before us, acquired real

property at 815 West Seventh Street, Chester, Pennsylvania, through the Veterans Administration in the belief that he thereby became the record owner of the property. Barnes held this belief in good faith, but also in error. In fact, record title remained with the Veterans Administration. This fact proved fatal to an agreement of sale subsequently entered into between Barnes and Stephen McKellar, defendant and appellant/cross-appellee. Litigation ensued, resulting in a judgment entered December 10, 1992, from which both parties have timely appealed. For the reasons set forth below, we affirm the judgment.

We begin by summarizing the facts essential to an understanding of both appeals. By agreement dated June 17, 1987, Barnes leased the property at issue to Frances A. McKellar and Keith D. McKellar, defendants and appellants/cross-appellees. On July 27, 1989, Barnes and Stephen McKellar entered into an agreement for the sale of the property. On the date set for settlement, August 18, 1989, Barnes was unable to convey record title because record title remained with the Veterans Administration.

In an action filed on or about July 26, 1990, at No. 90–11301, Stephen, Frances, and Keith McKellar alleged that Barnes had breached the agreement of sale by failing to convey clear title and a proper fee simple deed at the time of settlement. The McKellars sought specific performance and consequential damages.[1]

On July 31, 1990, at No. 90–11494, Barnes filed a complaint in ejectment against the McKellars. He alleged that all of the McKellars resided at 815 West Seventh Street and that the lessees, Frances and Keith, had failed to pay rent beginning in July 1989 and had failed to vacate the premises after receiving written notice that their lease was being terminated. He sought the ejectment of the McKellars, recovery of possession

1. Stephen McKellar and Keith McKellar are brothers; Frances McKellar is their mother. Although all three are named as plaintiffs in the complaint filed at No. 90–11301, which states that "[t]he parties hereto entered into a contract for the sale of certain real estate ...," the copy of the agreement of sale that is attached to the complaint as Exhibit A names only "Steve A. McKeller [sic]" as the buyer.

of the premises, and damages, including unpaid rent. This was followed, on January 10, 1991, by an amended complaint in which Barnes expressed the belief that the McKellars continued to reside on the premises.

In response, the McKellars filed an answer, new matter, and counterclaim. They asserted in their answer, *inter alia*, that Frances McKellar and Keith McKellar vacated the premises on or before August 15, 1989, and that Stephen McKellar now resided there, having been given permission to do so by the Lesniak and Coulston real estate agency, Barnes' agent, as a result of Barnes' failure to go forward with the settlement.

The counterclaim, captioned "Stephen A. McKellar vs. Scott T. Barnes," was essentially a restatement of the complaint filed by the McKellars in the action at No. 90–11301. Barnes responded with an answer and new matter in which he asserted the defenses of pendency of a prior action, collateral estoppel, statute of frauds, waiver and consent, failure of consideration, and laches.

The two actions arising out of the parties' dispute were not consolidated. The McKellars' action at No. 90–11301 went to arbitration on July 8, 1991, and the result was an award of damages to Barnes for rents due in the amount of $8,250.00, along with the ejectment of Stephen McKellar from the premises. No appeal was filed, and judgment was entered on the award.

Barnes' action at No. 90–11494 was tried before the Honorable George Koudelis sitting without a jury. At the beginning of trial, counsel for Barnes moved to amend Barnes' answer to Stephen McKellar's counterclaim to raise the affirmative defense that the judgment entered on the arbitration award in the earlier action was res judicata. The trial court denied the motion.

In an order entered March 20, 1992, the trial court, *inter alia*, awarded Barnes the sum of $8,250.00 as unpaid rent from Stephen McKellar; awarded Stephen McKellar the sum of $2,125.00, representing his damages of $625.00 and his down payment of $1,500.00, from Barnes; and directed that McKel-

lar be ejected from the premises. Both parties filed post-verdict motions, which were denied. Judgment was entered on December 10, 1992, and these timely appeals followed.

Stephen McKellar's appeal is docketed in this Court at No. 50 Philadelphia 1993; Barnes' cross-appeal is docketed at No. 195 Philadelphia 1993. Because Barnes asserts, *inter alia,* that the judgment entered in the arbitration proceeding at No. 90–11301 controls the outcome of the present case, we turn first to the issues raised in his cross-appeal. In reviewing the issues presented to us, we are mindful that the findings of a trial judge in a non-jury case will be given the same weight and effect as a jury verdict and will not be reversed absent an abuse of discretion or a finding of a lack of evidentiary support. *Lessner v. Rubinson,* 382 Pa.Super. 306, 308, 555 A.2d 193, 194 (1989) (*en banc*), *aff'd,* 527 Pa. 393, 592 A.2d 678 (1991). Our role as a reviewing court is to determine whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law. *Id.*

## I. BARNES' CROSS–APPEAL AT NO. 195 PHILADELPHIA 1993

Barnes raises the following issues:

1) Did the trial court err in failing to find, based on the judgment entered on the arbitration award in the action at No. 90–11301, that McKellar's counterclaim in the present action was barred by res judicata or collateral estoppel?

2) Did the trial court err in denying Barnes' motion to amend his reply to McKellar's counterclaim to allege res judicata?

3) Did the trial court err in finding that Barnes was in breach of the agreement of sale and liable to McKellar for damages as well as for the return of McKellar's down payment?

As to the first of these issues, the trial court held that because McKellar sought specific performance of an agreement for the sale of real property, the arbitrators were

without jurisdiction to adjudicate his claim. The court based its holding on the language of the governing statute, § 7361 of the Judicial Code, which states in pertinent part that no matter shall be referred to compulsory arbitration "which involves title to real property[.]" 42 Pa.C.S. § 7361(b)(1). The lack of subject matter jurisdiction rendered the arbitration award void, the court explained, and therefore it was not res judicata in the present case, nor could it serve as the basis for collateral estoppel.

 We agree. "When a court takes action beyond the power conferred on it by law (its jurisdiction), its action is a nullity...." *Dover v. Philadelphia Housing Authority*, 318 Pa.Super. 460, 469, 465 A.2d 644, 649 (1983). *Accord DeCoatsworth v. Jones*, 414 Pa.Super. 589, 607 A.2d 1094 (1992), *rev'd in part on other grounds*, 536 Pa. 414, 639 A.2d 792 (1994); *Commonwealth v. Miller*, 306 Pa.Super. 468, 452 A.2d 820 (1982). In the case before us, the arbitration panel took action in a matter that was specifically excluded by statute from its jurisdiction. Barnes maintains that "[e]ven if the issue of specific performance is not subject to compulsory arbitration, the issue of monetary damages certainly is" (Brief for Barnes as Appellant, at 10). Therefore, he argues, the decision of the arbitrators in the earlier action, which did not include an award of damages to McKellar, serves to preclude the trial court from awarding damages to McKellar in the present action. Barnes' argument gives no effect, however, to the fact that the matter at issue in the action at No. 90–11301 clearly "involve[d] title to real property," a fact that is not affected by the arbitrators' refusal to grant the remedy of specific performance. "Where matters of jurisdiction are concerned, the courts must enforce the letter of the law." *Commonwealth v. Ryan*, 459 Pa. 148, 157, 327 A.2d 351, 355 (1974).[2]

2. Although we have found no appellate case law directly on point, one trial court has held that an action to quiet title by which the plaintiff seeks to cancel a security title held by a bank is not within the jurisdiction of a Board of Arbitrators, as it involves title to real estate. *Lane v. Union National Bank of New Brighton*, 27 Beaver 191, 40 D. & C.2d 411 (1966) (interpreting predecessor statute).

Barnes also contends that the trial court had no jurisdiction to void *sua sponte* a decision in a case not before it. He argues further that McKellar cannot now "ignore [the arbitration] proceeding as if it had not occurred" (Brief for Barnes as Appellant, at 10), as he did not object to the assignment of the case to arbitration, did not seek to consolidate the two actions, and did not appeal the arbitration award.[3]

Our courts have held, however, that an objection to subject matter jurisdiction cannot be lost by estoppel, consent, or waiver, *Harcourt v. General Accident Insurance Company*, 419 Pa.Super. 155, 161, 615 A.2d 71, 75 (1992), *appeal denied*, 534 Pa. 648, 627 A.2d 179 (1993), but rather that "a void decree can be attacked at any time, in any court," *Brokans v. Melnick*, 391 Pa.Super. 21, 27, 569 A.2d 1373, 1376 (1989), *appeal denied*, 526 Pa. 626, 584 A.2d 310 (1990).

> "[I]t is never too late to attack a judgment or decree for want of jurisdiction. That question is always open." *In Re Simpson's Estate*, 253 Pa. 217, 225, 98 A. 35, 38 (1916). "Such a judgment is entitled to no authority or respect, and is subject to impeachment in collateral proceedings at any time by one whose rights it purports to affect." *Moskowitz's Registration Case*, 329 Pa. 183, 190, 196 A. 498, 502 (1938). "The want of jurisdiction over the subject matter may be questioned at any time. It may be questioned either in the trial court, before or after judgment, or for the first time in an appellate court, and it is fatal at any stage of the proceedings, even when collaterally involved...." *In Re Patterson's Estate*, 341 Pa. 177, 180, 19 A.2d 165, 166 (1941). Moreover, [it] is "well settled that a judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void and is subject to attack by the parties in the same court or may be collaterally attacked at any time." *Com. ex rel. Howard v.*

---

**3.** Stephen McKellar asserts that he did not receive notice of the arbitration until after the award was entered and that he thought the two actions had in fact been consolidated.

*Howard*, 138 Pa.Super. 505, 508, 10 A.2d 779, 781 (1933) [ (1940) ].

*DeCoatsworth v. Jones*, 414 Pa.Super. at 604, 607 A.2d at 1101 (emphasis deleted). *But see, e.g., Commonwealth ex rel. Cook v. Cook*, 303 Pa.Super. 61, 449 A.2d 577 (1982) (issue of subject matter jurisdiction is res judicata even though not litigated or wholly uncontested in first instance).

Accordingly, we conclude that the trial court's decision concerning the arbitration award was not only correct, but was a decision that the court was fully empowered to make. As the court in fact considered Barnes' asserted defense of res judicata but found it to be meritless, there is no need to consider further Barnes' claim that the court erred in refusing to allow him to amend his reply to McKellar's counterclaim by adding such a defense.

Finally, Barnes contends that the trial court erred in finding that he breached the agreement of sale. The trial court based its finding on paragraph 7(a) of the agreement, which states in pertinent part that "[t]he premises are to be conveyed free and clear of all liens, encumbrances, and easements . . .; the title . . . shall be good and marketable and such as will be insured by a reputable Title Insurance Company at the regular rates." The court concluded that Barnes' inability to convey such title on the scheduled settlement date constituted a breach of the agreement.

Barnes offers two arguments to support his contention that he did not breach the agreement:

1) "The Agreement of Sale contains a provision [paragraph 5(d) ] that Barnes need not perform Use and Occupancy repairs in excess of five hundred dollars ($500.00), and, accordingly, once the repairs exceeded that amount, unless McKellar performed the repairs (which he did not), Barnes was under no further obligation" (Brief for Barnes as Appellant, at 10; citations omitted).

2) Paragraph 7(b) of the agreement of sale gives the buyer certain options in the event that the seller is unable to convey good and marketable title, but does not provide that the seller

breaches the agreement in the event he is unable to convey such title.

The first provision at issue, paragraph 5(d), reads as follows:

The City of Chester Building Official shall inspect the real estate[,] and repairs, if any, in order that said real estate complies with the BOCA Code of the City of Chester, shall be made by and at the expense of the Seller and the Seller shall obtain a use and occupancy permit at his expense from the City of Chester[,] cost not to exceed $500.00.

Barnes' argument, as we understand it, is that because the cost of repairs needed to obtain a use and occupancy permit exceeded his obligation under paragraph 5(d) and McKellar failed to perform the needed repairs, Barnes was under no further obligation to comply with the terms of the agreement.

The trial court acknowledges but does not specifically address this argument. We note that paragraph 5(d) does not specify the consequence if the costs of repairs necessary for a use and occupancy permit exceed $500.00. It is settled law that ambiguous terms of a contract are construed against the drafter, *Second Federal Savings and Loan Association v. Brennan,* 409 Pa.Super. 581, 586, 598 A.2d 997, 999 (1991), in this case Barnes,[4] and we decline to read into paragraph 5(d) a provision relieving Barnes of any further obligation in the present situation. Accordingly, this argument is without merit.

Barnes also contends that "the seller's inability to convey clear title enables the purchaser ... to void the transaction or to accept such title as the seller could convey, but does not constitute a breach or entitle the purchaser to monetary damages for breach" (Brief for Barnes as Appellant, at 6). Barnes bases this argument on paragraph 7(b) of the agreement of sale, which reads as follows:

4. The agreement of sale is a form prepared by the Pennsylvania Association of Realtors, with typewritten additions, including paragraph 5(d); the Lesniak & Coulston Century 21 agency is named as the seller's agent; and Stephen McKellar testified that this was the agreement that he received from Sam Ahluwalia of Lesniak & Coulston.

In the event the Seller is unable to give a good and marketable title and such as will be insured by a reputable Title Company, ... Buyer shall have the option of taking such title as the Seller can give without abatement of price or of being repaid all monies paid by Buyer to the Seller on account of the purchase price and the Seller will reimburse the Buyer for any costs incurred by the Buyer for those items specified in paragraph 7(c) items (1), (2), (3), and in paragraph 7(d); and in the latter event there shall be no further liability or obligation on either of the parties hereto and this agreement shall become NULL AND VOID and all copies will be returned to Seller's agent for cancellation.

The only costs for which the seller is required to reimburse the buyer under this paragraph are the following: premiums for mechanics' lien insurance and/or title search [paragraph 7(c)(1)], premiums for flood and/or fire insurance [paragraph 7(c)(2)], appraisal fees and charges paid in advance to mortgagee [paragraph 7(c)(3)], and survey expenses [paragraph 7(d)]. In his counterclaim McKellar identified his consequential damages as "costs and fees connected with the scheduled settlement" in the amount of $3,152.00. "Buyer's normal settlement costs and accruals," listed in paragraph 7(c)(4) as among the costs to be paid by the buyer, are not included in paragraph 7(b) as costs which the buyer can recover from the seller. Although the parties do not explain the nature of the $625.00 in damages eventually awarded to McKellar, we assume that the amount refers to settlement costs and that Barnes seeks to limit his obligation to the terms of paragraph 7(b) in order to avoid reimbursing McKellar for such costs.

In its discussion of McKellar's claim for specific performance, to be discussed in Section II, the trial court stated that "Barnes was unable to convey any title at settlement and therefore, pursuant to paragraph 7(b), the agreement became null and void, subject only to reimbursement to the Buyer for downpayment money and costs incurred" (Trial Court Opinion at 10). If the "costs incurred" are settlement costs, however, the trial court erred in stating that they could be recovered under paragraph 7(b).

However, we may affirm the trial court if its decision is correct for any reason, and we do so here. Paragraph 7(b) applies to situations in which the buyer has an option: 1) to take such title as the seller can give, or 2) to be reimbursed for the down payment and specified costs. In the present case, the buyer (McKellar) had no option because, as will be discussed, the seller (Barnes) could not convey any title. We conclude, therefore, that the provisions of paragraph 7(b) do not control the obligations of the parties in this instance.

A "breach of contract is a non-performance of any contractual duty of immediate performance." *Camenisch v. Allen,* 158 Pa.Super. 174, 177, 44 A.2d 309, 310 (1945) (quoting Restatement of Contracts § 312). In the present case, the agreement of sale obligated Barnes to convey good and marketable title to the property, and time was of the essence. Accordingly, Barnes' failure to convey good and marketable title on the date of settlement constitutes a breach of the agreement, and paragraph 7(b) does not bar recovery of the damages awarded to McKellar.

## II. McKELLAR'S APPEAL AT NO. 50 PHILADELPHIA 1993

Three of the issues raised by Stephen McKellar rest on essentially the same argument, namely, that Barnes could have conveyed, and therefore should have been ordered to convey, title to the property to McKellar. Although the trial court noted at one point that Barnes may have had equitable title to the property in question, the court went on to conclude as follows:

> It is clear from the facts, that although Barnes was in breach of this contract, the Court was not in a position to order specific performance. Barnes, not being in possession of any title at settlement, was not in the position to convey any title to this property.

Trial Court Opinion at 9. The trial court added that it could not order an impossibility. Similarly, with regard to McKel-

lar's reliance on paragraph 7(b), the trial court found that there was no title which Barnes was able to convey.

McKellar argues as follows:

I. Did the trial court err in not directing specific performance where that court determined that the seller breached the agreement of sale with the appellant by appellee's failure to convey good and marketable title to the appellant[?]

II. Did the trial court err in not enforcing the provisions of paragraph seven (7) entitled "Title and Costs" of the agreement of sale which specifically provides that "in the event the seller is unable to give a good and marketable title and such [as] will be insured by a reputable title company, buyer shall have the option of taking such title as the seller can give["?]

. . . . .

IV. Did the trial court err in determining that although appellee is in breach of the agreement of sale, as not being the record owner of the real estate in question, it is impossible for him to convey title to the subject premises[?]

Brief for McKellar as Appellant, at 3–4.

■ A decree of specific performance is not a matter of right, but of grace. *Mrahunec v. Fausti,* 385 Pa. 64, 68, 121 A.2d 878, 880 (1956); *Wagner v. Estate of Rummel,* 391 Pa.Super. 555, 561, 571 A.2d 1055, 1058 (1990), *appeal denied,* 527 Pa. 588, 588 A.2d 510 (1991). Such a decree will only be granted if the plaintiff is clearly entitled to such relief, there is no adequate remedy at law, and the chancellor believes that justice requires such a decree. *Mrahunec v. Fausti, supra; Wagner v. Estate of Rummel, supra.* "[W]here plaintiff has the burden of proving certain facts, he cannot recover if his evidence is so uncertain or inadequate or equivocal or ambiguous or contradictory as to make findings or legitimate inferences therefrom a mere conjecture." *Mrahunec v. Fausti,* 385 Pa. at 69, 121 A.2d at 880. In addition, specific performance should not be ordered where it appears that doing so

may result in hardship or injustice to either party. *Wagner v. Estate of Rummel, supra.*

In a matter of specific performance, this Court will not reverse the decision of the trial court, acting as chancellor, unless we conclude that he has clearly abused his discretion or committed an error of law. *Cimina v. Bronich,* 517 Pa. 378, 387, 537 A.2d 1355, 1359 (1988). "Where a reading of the record reasonably can be said to reflect the conclusions reached by the Chancellor, a reviewing court may not substitute its judgment for that of the Chancellor." *Id.* at 387, 537 A.2d at 1360 [quoting *Rusiski v. Pribonic,* 511 Pa. 383, 389–90, 515 A.2d 507, 510 (1986)]. Although a reviewing court is not bound by facts which have no support in the record or which are merely derived from other facts, *id.* at 387, 537 A.2d at 1360, we are bound to follow the chancellor's decision if facts can support it, *id.* at 383, 537 A.2d at 1357–58.

After carefully considering the relevant case law and the evidence of record, we conclude that the trial court's decision to refuse to order specific performance was neither a clear abuse of discretion nor an error of law. Barnes could not be ordered to convey legal title to the property because he did not hold such title. *See Cohen v. Tonkin,* 358 Pa. 422, 57 A.2d 840 (1948) (where evidence was sufficient to sustain finding that conveyance of property from defendant to mother-in-law was a gift, bill for specific performance of agreement of sale was properly dismissed, as defendant did not have title to property). McKellar contends that Barnes could have obtained, and therefore should have been ordered to obtain, legal title. As the trial court pointed out, however, the agreement of sale imposes no such obligation on the seller.

Moreover, the record is replete with the type of uncertainty that argues against the award of specific performance. McKellar suggests, for example, that he was willing to accept a quitclaim deed from Barnes. This information does not appear in his trial testimony, however; during closing arguments the trial court asked McKellar's counsel if McKellar would take a quitclaim deed from Barnes, and counsel replied

that McKellar would do so. Similarly, McKellar asserts that Barnes was able to convey clear title to the real estate, but then cites Barnes' testimony that "[w]e were going to get [title]. Yes. We were—we were going to try, but we had to pay the house off to get it" (N.T. at 52). Asked by McKellar's counsel whether "you wanted Stephen McKellar to give you the $18,000 from which you were going to pay the house off and then, he would have to wait for title?" (N.T. at 52), Barnes answered no. In contrast, McKellar testified that Sam Ahluwalia, Barnes' agent at Century 21, told him that "he wanted me to give him the money so that he could obtain the deed" (N.T. at 114). McKellar now maintains that "[a]pparently, [Barnes] has the financial means to pay off the Administrator of Veterans Affair[s] and get title in his name and then convey it to [McKellar]. It is also apparent that [Barnes] had just refused or did not bother to do so" (Brief for McKellar as Appellant, at 16).

In sum, we do not need to consider whether the second and third requirements for a decree of specific performance (i.e., whether there is no adequate remedy at law and whether justice requires such a decree) have been met, for McKellar has failed to offer evidence sufficient to satisfy the first requirement, namely, that he is clearly entitled to such a decree. Accordingly, the trial court did not abuse its discretion in denying McKellar's request for a decree of specific performance.

■ Finally, McKellar contends that the trial court erred in awarding to Barnes unpaid rent and the remedy of ejectment. As McKellar occupied the premises without a lease or any other right thereto, and without paying rent (except for a brief period when he paid rent into an escrow account), we agree with the trial court that Barnes was entitled to the relief in question. *See Nikole, Inc. v. Klinger,* 412 Pa.Super. 289, 603 A.2d 587 (1992), *appeal denied,* 535 Pa. 660, 634 A.2d 223 (1993) (buyers cannot withhold monthly payments and thereby treat lease-purchase agreement as breached for one purpose, while remaining in possession of property and thereby treating agreement as in effect for another purpose); *Kaplan v.*

*Bankers Securities Corporation,* 340 Pa.Super. 579, 490 A.2d 932 (1985) [where tenant holds over after landlord has given notice terminating lease, landlord has option of treating tenant 1) as a trespasser, and ejecting him; 2) as holding over as tenant by sufferance; or 3) as holding over under terms of lease].[5]

Judgment affirmed.

---

**5.** In his brief as appellee, Barnes asks that we order McKellar to pay such rent as has accrued since the date of trial or, alternatively, that we remand the matter to the trial court so that the matter of additional rent can be addressed there. Barnes does not request such relief in his brief as appellant, however. Accordingly, we decline to consider the request. *Cf. Arcidiacono v. Timeless Towns of the Americas, Inc.,* 363 Pa.Super. 528, 526 A.2d 804 (1987) (appellee who files no counter-appeal cannot raise issues not raised by appellant).