J-A13006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BRUCE R. RAZILLARD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| NORFOLK SOUTHERN, NORFOLK SOUTHERN CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY | |
| Appellees | No. 1826 WDA 2014 |

Appeal from the Judgment Entered October 16, 2014
In the Court of Common Pleas of Greene County
Civil Division at No(s): 818 of 2011, G.D.

BEFORE:  PANELLA, J., SHOGAN, J., and OTT, J.

MEMORANDUM BY PANELLA, J.                          **FILED JULY 30, 2015**

Appellant, Bruce R. Razzilard, appeals from the judgment entered in the Court of Common Pleas of Greene County after a non-jury trial.  At issue in this appeal is whether the grant of a "private grade crossing" over a railway contained in a 1911 deed reserved an easement appurtenant or an easement in gross to the grantor.  Also at issue is whether impracticality of performance is a waivable defense when specific performance is sought.  We conclude that the trial court misapplied the applicable law in concluding that the deed reserved an easement in gross, but did not abuse its discretion in finding that specific performance was impractical.  We therefore reverse in part, affirm in part, vacate in part and remand to give the trial court an opportunity to address Razzilard's breach of contract claim.

Razillard owns an approximately 88 acre property ("the Property") in Greene County, Pennsylvania, that overlooks the Monangahela River. Between the Property and the river lies a railway line currently owned by Appellees Norfolk Southern Corporation and Norfolk Southern Railway Company (collectively, "Norfolk Southern"). Between Norfolk Southern's railway and the river is a Pennsylvania State highway, Route 88, and another property fronting the river which is not relevant to the instant appeal.

It is undisputed that in both Razillard's and Norfolk Southern's chain of title lies the 1911 deed at issue here. The 1911 deed granted Norfolk Southern's predecessor in title, The Monangahela Railroad Company, several parcels of land for the purpose of constructing a railway. As well as reserving certain rights in the grantors, the deed provides in relevant part that "[t]he Grantee agrees to construct and maintain … four private grade crossings over Parcel No. 4; the location of said crossings to be determined by the Grantors." Furthermore, the deed states that

> [t]he Grantee agrees to construct a road for the Grantors on Parcel No. 4 to take the place of the two roads on said parcel, which will be closed by the construction of its railroad, and during the course of construction to keep open a way or crossing to take the place temporarily of the two roads already mentioned, and of the new road agreed to be constructed, until the same is completed, in accordance with this stipulation.

It is undisputed that the Property contains "Parcel No. 4." It is furthermore undisputed that over the intervening years, a grade crossing from route 88 to the Property existed. The nature, character, and duration of the crossing were the subject of dispute between the parties to varying degrees in the trial court.

In 2009, Razillard purchased the Property from his uncles. Shortly after purchasing the Property, Razillard contacted Norfolk Southern to indicate his belief that the Norfolk Southern was liable for maintaining a grade crossing across its railway to the Property. After Norfolk Southern's legal department reviewed deeds submitted by Razillard, it sent Razillard the following letter.

> Norfolk Southern's real estate department has reviewed the deeds you sent to justify your requirement for a grade crossing across Norfolk Southern's Loveridge Secondary (MP LR 33.1) in Dunkard Township. It appears that everything is in order and your deed allows for a private grade crossing. I am enclosing the file that you previously forwarded to me.
>
> I have spoken with Tom Workman, Assistant Track Supervisor, and he did express to me a concern about some unique design and engineering required to make the crossing and approaches safe for your use. I trust you will work with us to ensure that this is a safe crossing. By copy of this letter, I am requesting Mr. Workman to contact you to arrange suitable design and installation of the grade.

In response, Razzilard arranged a meeting with Ben Taggert, an employee of Norfolk Southern.

Razzilard and Taggert met at the railway on route 88. Razilard identified several locations for grade crossings. After this meeting, Norfolk Southern again requested review of Razillard's deeds, but Razillard was ultimately unable to convince Norfolk Southern to construct a grade crossing. Razillard subsequently initiated this litigation.

In his amended complaint, Razillard asserted three distinct causes of action: declaratory judgment, breach of contract, and preliminary injunction. Under each of these causes of action, Razillard requested "[a] declaration and determination that Defendants are obligated to construct and maintain four private grade crossings over Parcel No. 4[,]" that Norfolk Southern maintain the existing grade crossing, and "such other and further relief as this Honorable Court may deem just and equitable under the circumstances herein."

The matter proceed to a bench trial. After receiving briefs and oral argument from the parties, the trial court entered an order denying Razilard relief on all counts. Razillard filed post-trial motions, which the trial court denied. This timely appeal followed.

We begin with our standard of review.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a

light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue … concerns a question of law, our scope of review is plenary.

*Stephan v. Waldron Elec. Heating and Cooling, LLC*, 100 A.3d 660, 664-664 (Pa. Super. 2014) (citation and brackets omitted).

Razillard first contends that the trial court erred in concluding that the 1911 deed established only an easement in gross, and not an easement appurtenant to the Property. An easement in gross and an easement appurtenant are similar in that they both represent a burden on title to a parcel of property. *See* Restatement (Third) of Property (Servitudes) § 1.2(1) (2000). In both instances, the burdened parcel is often referred to as the "servient tenement." *Id*., at § 1.1(1)(c). The principal distinction between the two is in the nature of the beneficiary.

The beneficiary of an easement in gross is a person, and the right attaches to that person. *See Lindemuth v. Safe Harbor Water Power Corp.*, 163 A. 159, 160 (Pa. 1932). It is therefore not tied to the ownership or occupancy of a certain parcel of land. *See* Restatement (Third) of Property (Servitudes) § 1.5(2) (2000).

In contrast, the beneficiary of an easement appurtenant is the owner of another parcel of property, and the right attaches to the ownership or occupancy of the parcel, and not the person. *See Lindemuth*, 163 A. at

- 5 -

160. The parcel of land to which the benefit of the easement is attached is often referred to as the "dominant estate." Restatement (Third) of Property (Servitudes) § 1.1(1)(b) (2000). The benefit of an easement appurtenat is transferred automatically when ownership of the dominant estate is transferred; the transferor retains no right to the benefit. **See** Restatement (Third) of Property (Servitudes) § 1.1(1)(a); 1.5(1).

In the present appeal, Norfolk Southern contends, and the trial court concluded, that the 1911 deed created an easement in gross in the grantors, Asa and Myrtle Sterling, and therefore was extinguished when they passed away. Razillard argues that the 1911 deed created an easement appurtenant to Parcel No. 4, and that therefore he, as owner of the dominant estate, is entitled to the benefit of the easement.

"Whether an easement is in gross or appurtenant must be determined by the fair interpretation of the grant or reservation creating the easement, aided if necessary by the situation of the property and the surrounding circumstances." **Lindenmuth**, 163 A. at 161 (citation omitted). The goal of interpreting the document that created the easement is to effectuate the intent of the parties. **See Maranatha Settlement Association v. Evans**, 122 A.2d 679, 680-681 (Pa. 1956). A court is never to presume an easement is in gross if it can be fairly read to be appurtenant. **See Lindenmuth**, 163 A. at 161. An easement should be held to be in gross if it

bears no connection with the use and enjoyment of a dominant estate. ***See id***.

The Supreme Court of Pennsylvania was faced with an analogous fact pattern in ***Maranatha***. A real estate company developed a residential subdivision, and constructed a pool on one of the parcels in the subdivision. All the deeds to the other parcels included the phrase "The Grantee and his immediate family only, shall enjoy the free use of the swimming pool." Maranatha later acquired the unsold lots in the subdivision, and forbade any owners that were not parties to the original sale from the real estate company from using the pool. Maranatha argued that the deeds contained only easements in gross that were personal to the original purchaser of the lots, and that subsequent purchasers were not entitled to the benefit of the easement. The ***Maranatha*** court unequivocally rejected Maranatha's position.

> [I]t seems utterly impossible to believe that the intention was to give the privilege of bathing in the pool only to the original purchasers of the lots as a mere easement in gross, much less a revocable license. It may well be asked, why should the right have been given to the original purchasers as individuals wholly apart from their status as owners of the neighboring lots in view of the fact that such a purchaser might remain the owner merely for a very short time and then deed the title to an assignee, in which case, if [Maranatha's] position were correct, he would still have the right to bathe in the pool as possessing an easement in gross, but on the other hand the new owner of the property and all subsequent owners and occupants would have no right to the bathing privilege at all.

122 A.2d at 681.

Similar to the *Maranatha* court, we struggle to understand how the easement at issue here would make any sense as an easement in gross. If the Sterlings had sold the Property shortly after filing the deed, it is difficult to envision what use they would have had for multiple grade crossings into the property. It would make no sense for the Sterlings to retain the benefit of the grade crossings after they no longer owned the Property. Similarly, it seems nonsensical that a subsequent purchaser of the Property would be denied the benefit of the easement in favor of the Sterlings. Such grade crossings are clearly related to the use and enjoyment of the Property, and the easement is fairly read as an easement appurtenant. Thus, we must conclude that it is, and that the trial court committed an error of law in deciding otherwise. *See Rusciolelli v. Smith*, 171 A.2d 802, 806 (Pa. Super. 1961).

As we conclude that the trial court erred in finding that the 1911 deed created an easement in gross, we need not reach Razillard's second argument on appeal concerning an easement by implication. We must, however, address Razillard's third issue on appeal.

Razillard argues that the trial court erred when it concluded that construction of the grade crossings required by the easement would be impractical. Razillard's primary argument in this respect is that this issue is

waived, as Norfolk Southern did not plead it as a defense. We conclude that impracticality is always at issue when equitable relief is requested.

As noted previously, while Razillard requested relief under theories of declaratory judgment and breach of contract, the remedies sought sound in specific performance and other equitable relief. In other words, Razillard's amended complaint does not request monetary damages at law, but rather an order compelling Norfolk Southern to honor its obligations under the 1911 deed.

"A decree of specific performance is not a matter of right, but of grace." **Barnes v. McKellar**, 644 A.2d 770, 776 (Pa. Super. 1994) (citation omitted). Specific performance is not to be enforced by a court if it would "result in hardship or injustice to either party." **Id**. (citation omitted). As an appellate court, we are not to substitute our judgment for that of the trial court unless the trial court "clearly abused [its] discretion or committed an error of law." **Id**. (citation omitted).

Here, the trial court's findings and conclusions are amply supported by the record. In 1933, route 88 was lowered such that it was subsequently three to four feet lower than the railway. **See** N.T., Trial, 12/16/13, at 118-119. Furthermore, route 88 was widened in 1993, providing less room for an approach to traverse the grade from route 88 to a railway crossing. **See id**., at 28.

Approximately 20 years ago, the federal Department of Transportation instituted an initiative to eliminate grade crossings due the number and severity of accidents occurring at them. *See id*., at 178-179. The crossings sought by Razillard have sight lines less than the minimum safe stopping distance of the trains that travel that railway. *See id*., at 159. While the overwhelming majority of the freight conveyed by these trains is coal, some hazardous waste is also carried over the railway. *See id*., at 160.

Under these circumstances, we cannot conclude that the trial court abused its discretion in finding that specific performance of the easement contained in the deed was impractical. Based upon the evidence of record, there is no safe manner in which to construct the grade crossings requested by Razillard. Other accommodations to create a crossing, such as a tunnel or a bridge, would impose an undue hardship upon Norfolk Southern, and furthermore, are not required by the deed's explicit language requiring only grade crossings.

As a result of our review, we affirm the trial court's denial of Razillard's request for specific performance as impractical. We vacate the judgment, however, and remand for the trial court to consider "such other and further relief as [it] may deem just and equitable under the circumstances[,]" pursuant to Razzilard's claim for breach of contract.

Judgment reversed in part, affirmed in part, vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2015